BEATRICE WOODY, Plaintiff v. THOMASVILLE UPHOLSTERY INCORPORATED, Employer, SELF-INSURED (Helsman-Management Services, Inc., Servicing Agent), Defendant

No. COA00-830

(Filed 18 September 2001)

**1. Appeal and Error— appealability—discovery order—documents provided—mootness**

An appeal from a discovery order in a workers' compensation action was moot where defendant had produced the documents in question.

**2. Appeal and Error— appealability—discovery order—no sanctions at that time**

An appeal from a discovery order by a deputy commissioner in a workers' compensation case was interlocutory and not immediately appealable because defendant had not been held in contempt and sanctioned at that time.

**3. Workers' Compensation— violation of discovery order—appeal to Full Commission—no automatic stay**

Discovery sanctions in a workers' compensation action were not improperly calculated where defendant contended that noncompliance did not begin until its appeal to the full Commission was denied as interlocutory. Rule 703 provides only that a stay may be entered, not that the effect of a challenged order is automatically stayed by appeal from that order.

**4. Workers' Compensation— discovery violations—sanctions—notice and opportunity to be heard**

There was no violation of defendant's due process rights in a workers' compensation hearing where defendant received sufficient notice of the possibility of the imposition of sanctions for violating a discovery order and sufficient opportunity to be heard. Moreover, the sanctions imposed at this hearing did not constitute a deprivation of property.

**5. Workers' Compensation— motion to recuse—denied**

A deputy commissioner did not abuse his discretion by denying defendant's motion to recuse in a workers' compensation action, and the Full Commission did not err by affirming the deputy commissioner.

6. **Workers' Compensation— depression and fibromyalgia— job related stress—greater risk than general public**

The Industrial Commission in a workers' compensation case properly found that plaintiff experienced abnormal job stress and properly concluded that plaintiff's depression and fibromyalgia were compensable occupational diseases where the Commission's findings were supported by the medical testimony that the conditions of plaintiff's employment exposed her to a greater risk than the public and the findings support the conclusion that there was a causal connection between plaintiff's depression and fibromyalgia and her employment. The term "employment" must be interpreted as referring to a particular job rather than to the type of job. N.C.G.S. § 97-53(13).

Judge MARTIN concurring in part and dissenting in part.

Appeal by defendant from Opinion and Award entered 13 January 2000 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 May 2001.

*Mary F. Pyron, for plaintiff-appellee.*

*Morris, York, Williams, Surles & Barringer, L.L.P., by Thomas E. Williams and Stephen Kushner, and Orbock, Bowden, Ruark & Dillard, by Maureen T. Orbock, for defendant-appellant.*

HUDSON, Judge.

Thomasville Upholstery (defendant) appeals from the 13 January 2000 "Opinion and Award" of the Full Industrial Commission (the Full Commission), awarding Beatrice Woody (plaintiff) temporary total disability benefits, medical expenses, and attorney's fees, and imposing sanctions upon defendant for violating a discovery order. We affirm.

The Opinion and Award of the Full Commission sets forth twenty-four findings of fact. Because the first nine findings provide a helpful summary of the relevant underlying facts in this case, we set them forth here in substantial part:

1. Plaintiff was a fifty year old female at the time of the hearing before the Deputy Commissioner. Plaintiff began working for defendant in 1988 and worked as a Customer Service Manager prior to the Fall of 1993. In October 1993, plaintiff was transferred to the position of Marketing Assistant. In this position, plaintiff

demonstrated strong administrative skills and won several awards . . . .

2. In the spring of 1993, defendant hired Ms. Sharon Bosworth as General Manager of Marketing and Design. Ms. Bosworth was hired for her ability to design new lines of upholstered furniture. The new designs that Ms. Bosworth produced for defendant resulted in a substantial increase in defendant's income.

3. Shortly after Ms. Bosworth was hired, defendant determined that she did not possess adequate administrative skills and did not demonstrate any desire to develop them. Administrative skills were needed in conjunction with the creative work Ms. Bosworth performed . . . . To resolve this dilemma, defendant assigned plaintiff as Ms. Bosworth's assistant to perform administrative duties.

4. Prior to her reassignment, plaintiff had reported directly to Mr. Bob Walters, the new company president. Mr. Walters assured plaintiff that if the transfer was not successful plaintiff would be moved to another position and that her employment with defendant was secure. Plaintiff was also informed of the importance to defendant's success in the furniture industry of having Ms. Bosworth's designs distributed to the other departments in a timely fashion.

5. In her new position, plaintiff was required to obtain specifications of new designs from Ms. Bosworth after which plaintiff was to distribute them to the necessary departments. Initially plaintiff and Ms. Bosworth worked well together, and plaintiff had no difficulties in obtaining the information she needed from Ms. Bosworth. Subsequently, for reasons unknown to plaintiff, Ms. Bosworth stopped providing her with the information concerning the new designs. Plaintiff unsuccessfully sought to obtain the needed information by leaving memos and telephone messages with Ms. Bosworth.

6. As time progressed, the relationship between Ms. Bosworth and plaintiff deteriorated. In her dealings with plaintiff, Ms. Bosworth's tone was short and harsh. Ms. Bosworth cursed at plaintiff and berated her by calling plaintiff "dumb" and "stupid." Additionally, Ms. Bosworth instructed the employees supposedly supervised by plaintiff to report to her (Ms. Bosworth) rather

than to plaintiff because plaintiff did not know what she was doing.

7. Due to Ms. Bosworth [sic] behavior, plaintiff grew frustrated and worried over the inability to adequately perform the requirements of her job. Plaintiff's job became more stressful and her repeated attempts to resolve the problems with Ms. Bosworth were not successful. In contrast, plaintiff had managed the stress associated with her former position with defendant and was able to resolve prior problems.

8. Ms. Jan Comer, defendants [sic] human resources manager, was informed by plaintiff of the problems with Ms. Bosworth. Ms. Comer was played a tape of a conversation between plaintiff and Ms. Bosworth. Having heard the contents of this taped conversation, Ms. Comer corroborated plaintiff's testimony that Ms. Bosworth cursed at plaintiff, had called her a "bitch," and that Ms. Bosworth was insulting in her tone. Based upon these and other workplace examples, Ms. Comer was of the opinion that Ms. Bosworth was emotionally unstable.

[9]. Ms. Comer played the tape in question for Mr. Walters and discussed with him the need for professional counseling for Ms. Bosworth. Plaintiff also personally informed Mr. Walters of the problems with Ms. Bosworth. Plaintiff was informed by Mr. Walters that any workplace issues or problems would be resolved and that her employment with defendant was not in jeopardy. Mr. Walters further indicated to plaintiff that he would discuss the situation with Ms. Bosworth. However, Mr. Walters' discussions with Ms. Bosworth regarding plaintiff's concerns only worsened the situation, resulting in increased pressure and stress on plaintiff. Additionally, Mr. Walters promoted Ms. Bosworth to vice-president on 27 May 1994 and Ms. Comer was fired after expressing her views concerning Ms. Bosworth's conduct.

As to the merits of plaintiff's claim, the Full Commission entered the following Conclusions of Law:

1. Plaintiff's salary and average weekly wage at the time of her termination on 22 June 1994 yields the maximum compensation rate for 1994, $466.00 per week. N.C. Gen. Stat. § 97-2(5).

2. Plaintiff's employment with defendant caused her depression and exposed her to an increased risk of developing this condition as compared to members of the general public not so employed.

**WOODY v. THOMASVILLE UPHOLSTERY, INC.**

[146 N.C. App. 187 (2001)]

N.C. Gen. Stat. § 97-53(13). Because plaintiff's fibromyalgia was caused or significantly aggravated by her depression, it was also caused by her employment with defendant. *Id.*; N.C. Gen. Stat. § 97-2(6).

3. As the result of her depression and fibromyalgia, plaintiff is entitled [] to be paid by defendant temporary total disability compensation at the rate of $466.00 per week for the period of 23 June 1994 through the present and continuing until such time as she returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29.

4. As the result of her depression and fibromyalgia, plaintiff is entitled to have defendant pay all medical expenses incurred or to be incurred. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.

5. Pursuant to Industrial Commission Rule 802, defendant's failure to comply with Deputy Commissioner Glenn's 5 August 1997 Order Compelling Discovery subjects it to the imposition of sanctions. Accordingly, defendant is assessed an additional attorney's fee in the amount of $2,585.00 for the time and effort expended by counsel for plaintiff on this issue. N.C.R. Civ. P. 37.

Accordingly, the Full Commission awarded plaintiff temporary total disability benefits beginning 23 June 1994, the cost of all medical expenses, attorney's fees of 25% of the compensation due plaintiff, $2,585.00 in sanctions, and costs. Defendant timely appealed to this Court.

On appeal, defendant presents thirty-eight assignments of error condensed into five arguments for our review. The first three arguments pertain to defendant's violation of a discovery order and the procedural history surrounding that issue. The fourth argument pertains to the alleged impartiality of the Deputy Commissioner who first entered an "Opinion and Award" in the case. The fifth and final argument pertains to the sufficiency of the evidence to support plaintiff's claim.

## I. DISCOVERY ORDER

### A. Procedural History

We first set forth a review of the following additional procedural history occurring prior to entry of the initial Opinion and Award by Deputy Commissioner George T. Glenn, II on 31 August 1998. On 4 October 1996, plaintiff moved the Commission, pursuant to N.C. Gen.

Stat. § 97-80 (1999), to allow plaintiff to request that defendant produce certain documents consisting of notes made by an employee of defendant while interviewing other employees. Plaintiff acknowledged in the motion that the notes she sought were generally protected from discovery by N.C.R. Civ. P. 26(b)(3) (Rule 26(b)(3)), but asserted that she was unable to obtain the substantial equivalent of these materials by other means, and was therefore entitled to receive a copy of these statements pursuant to Rule 26(b)(3). In response to plaintiff's motion, defendant wrote a letter to Deputy Commissioner William Haigh dated 21 January 1997 asserting that the notes were prepared in anticipation of litigation and that, contrary to plaintiff's contention, plaintiff was able to obtain the information contained in the notes by deposing the employees herself or by issuing subpoenas to them directing them to appear at the hearing.

Deputy Commissioner Haigh entered an order on 31 January 1997 granting plaintiff's motion for permission to request documents pursuant to N.C.R. Civ. P. 34. Deputy Commissioner Haigh further ordered defendant to produce the documents upon receipt of plaintiff's request, or to object within 15 days of receipt of plaintiff's request. On 1 April 1997, plaintiff sent defendant a "Request for Documents," requesting defendant to provide plaintiff with copies of "statements of Thomasville Upholstery employees taken by Dave Masters in 1994." In response, defendant filed an "Objection to Request for Documents" on 15 April 1997, again contending that the documents requested were protected from discovery by Rule 26(b)(3). Upon review of defendant's objection, Executive Secretary Tracey H. Weaver entered an order on 24 June 1997 denying plaintiff's request for production of documents.

Plaintiff appealed the order and argued in a "Memorandum of Law" that the interviews were conducted by Dave Masters, and that because Masters is not an attorney, the notes from those interviews did not constitute work product. In response, defendant filed a brief arguing that the interviews were conducted by Masters at the request of defendant's attorneys in anticipation of litigation, and that Masters was an agent of defendant when he took the notes. Deputy Commissioner Glenn heard from the parties on this matter on 28 July 1997 and ordered defendant to turn over the notes in question for *in camera* inspection, which defendant did. After reviewing the documents, Deputy Commissioner Glenn entered an order on 5 August 1997 directing defendant to produce the notes in question to plaintiff by 6 August 1997. Defendant did not comply with the order by 6

August 1997. On 8 August 1997, defendant filed a "Notice of Appeal to the Full Commission—or, in the alternative—Motion for Reconsideration." Defendant purported to appeal the order pursuant to N.C. Gen. Stat. § 97-85 (1999) and Industrial Commission Workers' Compensation Rule 701 (Rule 701).

Plaintiff moved to dismiss the appeal as interlocutory. On 11 August 1997, the Docket Director for the Commission notified defendant that the order from which defendant purported to appeal was interlocutory, that defendant's purported appeal would be treated as an exception to the interlocutory order, and that defendant would be entitled to appeal the order only after a final Opinion and Award had been issued.

On 29 August 1997, plaintiff filed a "Receipt of Witness Statements," acknowledging receipt of the notes in question from defendant. Defendant then filed a "Motion to Recuse and for a New Hearing—And—Alternative Motion to Dispense with Discovery Sanctions Hearing—And—Alternative Motion to Recuse as to the Discovery Sanctions Proceeding." Deputy Commissioner Glenn denied these motions at a hearing on 21 November 1997 and scheduled a hearing for 12 January 1998 to address whether defendant would be held in contempt or subjected to sanctions for failing to comply with the discovery order by 6 August 1997. Defendant then filed an appeal from the denial of these motions, purporting to rely upon Industrial Commission Workers' Compensation Rule 703 (Rule 703), and requesting a hearing. The Chairman of the Commission responded by sending a letter to defendant stating that, although defendant "raised some serious points about the nature of this hearing," such points "should be more properly raised before Deputy Commissioner Glenn at the hearing in order for him to rule on these matters." The Chairman also stated: "Depending on the outcome of the hearing, these matters can certainly be appealed to the Full Commission for its reconsideration." Having set forth this additional procedural history, we now turn to the substance of defendant's arguments.

## B. Analysis

[1] In its first argument, defendant contends that the 5 August 1997 order, compelling defendant to produce the notes in question to plaintiff by 6 August 1997, was contrary to law. We believe the issue raised in this argument has been rendered moot. Our Supreme Court has explained the mootness doctrine as follows:

Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 61 L. Ed. 2d 297 (1979). Here, in arguing that the order compelling discovery was contrary to law, defendant essentially seeks a ruling from this Court that defendant should not have been compelled to produce the documents because they were entitled to the protection provided by Rule 26(b)(3). However, because defendant has produced the documents in question, the relief defendant seeks cannot be granted. *See Willis v. Power Co.*, 291 N.C. 19, 30, 229 S.E.2d 191, 198 (1976) (stating that compliance with an order compelling discovery renders moot any challenge to the validity of that order). We also note that defendant acknowledges in its brief that "[t]he Court cannot undo the harm that was done," apparently conceding that the relief it seeks in its first argument cannot be provided by this Court.

**[2]** In its second argument, defendant contends that the 5 August 1997 order entered by the Deputy Commissioner was immediately appealable. It is well-established that, "[a]s a general rule, an order compelling discovery is not immediately appealable because it is interlocutory and does not affect a substantial right which would be lost if the ruling is not reviewed before final judgment." *Mack v. Moore*, 91 N.C. App. 478, 480, 372 S.E.2d 314, 316 (1988), *disc. review denied*, 323 N.C. 704, 377 S.E.2d 225 (1989). However, where a party is found to be in contempt or is otherwise sanctioned for non-compliance with a discovery order, the party may be entitled to immediate appeal of that order. *See Sharpe v. Worland*, 351 N.C. 159, 163-64, 522 S.E.2d 577, 580 (1999), *disc. review denied*, 352 N.C. 150, 544 S.E.2d 228 (2000). Here, there is no indication that defendant was adjudged to be in contempt or sanctioned until, at the very earliest, the hearing on 12 August 1997 (at which time it appears, as discussed in more detail below, that the Deputy Commissioner may have intended a single evidentiary ruling to constitute a sanction for failure to comply with the discovery order). Thus, at the time defendant purported to appeal the discovery order, that order was interlocutory and not immediately appealable because defendant had not been adjudged in contempt and no sanctions had been imposed upon defendant.

WOODY v. THOMASVILLE UPHOLSTERY, INC.

[146 N.C. App. 187 (2001)]

In sum, we believe that the validity of the discovery order has been rendered moot, and that the discovery order was not immediately appealable. However, even assuming *arguendo* that the order compelling defendant to produce the documents in question was error, and that it should have been immediately appealable, defendant has failed to indicate how production of the documents in question could have prejudiced defendant. Defendant's first five assignments of error (corresponding to arguments one and two) are therefore overruled.

[3] In its third argument (corresponding to assignments of error five, six and seven), defendant contends that the manner in which the Deputy Commissioner imposed sanctions upon defendant was erroneous, and that the Full Commission therefore erred in affirming these sanctions. This argument, in turn, is based upon two contentions. First, defendant contends that the Deputy Commissioner erred in calculating the sanctions against defendant based upon six days of noncompliance with the 5 August 1997 order rather than one day of noncompliance. Statements made by the Deputy Commissioner at the 12 January 1998 hearing do appear to indicate that he viewed defendant's noncompliance to have started on 6 August 1997. Defendant contends, however, that noncompliance did not begin until defendant received the 11 August 1997 letter from the Docket Director informing defendant that its appeal was interlocutory.

Defendant has not cited any authority for the proposition that an appeal to the Full Commission from a discovery order entered by a Deputy Commissioner stays the effect of the order. Here, by letter filed 8 August 1997, defendant purported to appeal from the Deputy Commissioner's 5 August 1997 order (ordering defendant to produce the documents by 6 August 1997). Subdivision (1) of Rule 703 provides that a ruling on a motion to reconsider, if "made in a summary manner, without detailed findings of fact," may be appealed by requesting a hearing within 15 days of receipt of the ruling.[1] Rule 703 does not provide that the effect of a challenged order is automatically stayed by an appeal from that order, but only that a Commissioner or Administrative Officer *may* enter an order staying the effect of an

---

1. We note that defendant's letter purports to appeal the Deputy Commissioner's order pursuant to Rule 701(1). However, Rule 701(1) addresses appeals taken pursuant to N.C. Gen. Stat. § 97-85 (1999), which section contemplates only reviews of awards, and not reviews of orders. Thus, defendant's purported appeal should have been made pursuant to Rule 703, and not Rule 701.

order. *See* Rule 703(2). Thus, because the discovery order instructed defendant to produce the documents by 6 August 1997, and because the effect of this order was not stayed as a result of defendant's purported appeal, we do not believe the Deputy Commissioner's imposition of sanctions upon defendant for noncompliance based upon a calculation of six days constituted an abuse of discretion.

**[4]** Defendant also contends that the Deputy Commissioner failed to provide defendant proper notice and an opportunity to be heard before imposing sanctions at the 12 August 1997 hearing. Defendant argues that at the 12 August 1997 hearing, the Deputy Commissioner first determined that sanctions would be addressed at a later hearing, but then proceeded to impose sanctions at the hearing. Upon reviewing the transcript from the 12 August 1997 hearing, it does appear that, despite the Deputy Commissioner's statement that he would hold a hearing to address sanctions at a later date, at least one of his rulings at the outset of the hearing (that Mr. Masters could be called as a witness by plaintiff but not by defendant) was intended to constitute a sanction against defendant for failure to comply with the discovery order. Defendant cites the following proposition in support of its argument:

> Notice and an opportunity to be heard prior to depriving a person of his property are essential elements of due process of law which is guaranteed by the Fourteenth Amendment of the United States Constitution and Article 1, Section 17, of the North Carolina Constitution.

*McDonald's Corp. v. Dwyer*, 338 N.C. 445, 448, 450 S.E.2d 888, 891 (1994). We believe that at the time of the 12 August 1997 hearing, defendant had received sufficient notice of the possibility of the imposition of sanctions for failure to comply with the 5 August 1997 discovery order, and that defendant had received a sufficient opportunity to be heard on the matter. Moreover, any sanctions imposed upon defendant at the 12 August 1997 hearing did not constitute a deprivation of property (such as a monetary fine). Therefore, we find no violation of defendant's due process rights as a result of the Full Commission's ruling affirming the sanctions imposed upon defendant. Assignments of error five, six and seven are overruled.

## II. RECUSAL

**[5]** In its fourth argument (corresponding to assignments of error eight through twelve), defendant contends that the Full Commission

erred in affirming the Deputy Commissioner's denial of defendant's motion to recuse. Industrial Commission Workers' Compensation Rule 615 is entitled "Disqualification of a Commissioner or Deputy Commissioner," and provides as follows:

> In their discretion, Commissioners or Deputy Commissioners may recuse themselves from the hearing of any case before the Industrial Commission. For good cause shown, a majority of the Full Commission may remove a Commissioner or Deputy Commissioner from hearing a case.

Having carefully reviewed the entire record in this case, we hold that Deputy Commissioner Glenn did not abuse his discretion in denying defendant's motion to recuse, and that it was not error for the Full Commission to affirm the Deputy Commissioner's denial of the motion to recuse. Accordingly, assignments of error eight through twelve are overruled.

## III. SUFFICIENCY OF THE EVIDENCE

**[6]** In defendant's fifth and final argument in its brief (corresponding to assignments of error twelve through thirty-eight), defendant contends that the Opinion and Award of the Full Commission is not supported by competent evidence in the record. Specifically, defendant asserts that the evidence was insufficient to establish that plaintiff's fibromyalgia and depression are compensable occupational diseases because it did not show that: (1) these diseases are characteristic of plaintiff's particular trade, occupation or employment; (2) working as a marketing manager in the furniture industry subjected plaintiff to an increased risk of contracting these diseases; and (3) there is a causal connection between the diseases and plaintiff's employment.

"For a disability to be compensable under our Workers' Compensation Act, it must be either the result of an accident arising out of and in the course of employment or an 'occupational disease.' " *Hansel v. Sherman Textiles*, 304 N.C. 44, 51, 283 S.E.2d 101, 105 (1981). By the express language of N.C. Gen. Stat. § 97-53 (1999), only the diseases and conditions enumerated therein shall be deemed to be occupational diseases within the meaning of the Act. Because neither fibromyalgia nor depression is specifically mentioned in N.C.G.S. § 97-53, the issue is whether these two diseases fall within subsection (13) of the statute, which defines an "occupational disease" as

> [a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular

trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C.G.S. § 97-53(13). Our Supreme Court has interpreted this language as requiring three elements in order to prove that a disease is an "occupational disease": (1) the disease must be characteristic of and peculiar to the claimant's particular trade, occupation or employment; (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and (3) there must be proof of causation (proof of a causal connection between the disease and the employment). *See Hansel,* 304 N.C. at 52, 283 S.E.2d at 105-06 (citing *Booker v. Medical Center,* 297 N.C. 458, 468, 475, 256 S.E.2d 189, 196, 200 (1979)). Furthermore, in *Rutledge v. Tultex Corp.,* 308 N.C. 85, 301 S.E.2d 359 (1983), our Supreme Court explained what is required to establish the first two elements:

> To satisfy the first and second elements it is not necessary that the disease originate exclusively from or be unique to the particular trade or occupation in question. All ordinary diseases of life are not excluded from the statute's coverage. Only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded. Thus, the first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally. The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation.

*Id.* at 93-94, 301 S.E.2d at 365 (citations and internal quotation marks omitted).

Here, the trial court made the following pertinent findings of fact:

> 14. As the result of the situation at work and her relationship with Ms. Bosworth, plaintiff began to experience symptoms of depression in the spring of 1994. Plaintiff felt as though she was losing her mind and informed others, including management, that "this situation was killing her." Plaintiff felt demeaned, embarrassed, humiliated, worthless and believed that Ms. Bosworth was attempting to get rid of her. Prior to her assignment with Ms. Bosworth, plaintiff had not experienced these types of psychological symptoms.

WOODY v. THOMASVILLE UPHOLSTERY, INC.

[146 N.C. App. 187 (2001)]

15. Additionally, as the result of the situation at work and her relationship with Ms. Bosworth, plaintiff began to experience adverse physical ailments in the spring of 1994. Plaintiff experienced chronic pain and fatigue, severe headaches, extreme joint and muscle pain, chemical allergies and problems with sleeping. Prior to her assignment with Ms. Bosworth, plaintiff had not experienced these types of adverse physical ailments.

16. As the result of her physical problems, plaintiff sought treatment on 18 May 1994 from Dr. Wodecki, a specialist in internal medicine and rheumatology. Dr. Wodecki examined plaintiff and diagnosed her as having fibromyalgia.

17. Following her initial examination by Dr. Wodecki, plaintiff continued working for defendant until 22 June 1994, when she was fired. On 24 June 1994, plaintiff returned to Dr. Wodecki who hospitalized plaintiff due to a severe flare-up of her fibromyalgia and severe depression. Dr. Wodecki also referred plaintiff to Dr. Patricia Hill, a psychiatrist.

18. Dr. Wodecki opined that depression can cause or significantly aggravate fibromyalgia. As for plaintiff's condition, Dr. Wodecki opined that her depression was caused by her employment related stress and that her fibromyalgia was significantly aggravated by her depression.

19. Dr. Patricia Hill first examined plaintiff on 30 June 1994. Following her examination of plaintiff, Dr. Hill found that plaintiff was grossly impaired by major depression. Dr. Hill opined that plaintiff's depression was related to severe workplace stress associated with her relationship with Ms. Bosworth and to her termination by defendant. Dr. Hill further opined that plaintiff's employment with defendant exposed her to an increased risk of developing major depression as compared to members of the general public not so employed. . . .

20. The employment related stress experienced by plaintiff as Ms. Bosworth's assistant was not the normal type of stress that an employee would experience in a position with defendant or any other employer. Plaintiff's employment with defendant caused the development of her depression and exposed her to an increased risk of developing severe depression as compared to the general public not so employed.

The Full Commission also entered the following Conclusion of Law:

> 2. Plaintiff's employment with defendant caused her depression and exposed her to an increased risk of developing this condition as compared to members of the general public not so employed. . . . Because plaintiff's fibromyalgia was caused or significantly aggravated by her depression, it was also caused by her employment with defendant.

On appeal from an opinion and award of the Industrial Commission, findings of fact are conclusive if they are supported by any competent evidence in the record, even if there is evidence that would support findings to the contrary. *See Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). "The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." *Id.* Having carefully reviewed the evidence in the record, we hold that there is competent evidence to support the Full Commission's findings of fact.

Specifically, the testimony of Dr. Wodecki (plaintiff's treating physician) and the testimony of Dr. Hill (a psychiatrist who treated plaintiff) supports finding of fact number 20 that "Plaintiff's employment with defendant caused the development of her depression and exposed her to an increased risk of developing severe depression as compared to the general public not so employed." During his deposition, Dr. Wodecki responded in the affirmative to a lengthy hypothetical question posed by plaintiff's counsel, indicating that the conditions of plaintiff's employment exposed her to a greater risk of developing depression and fibromyalgia than members of the public not exposed to such conditions. Similarly, Dr. Hill testified that plaintiff's employment exposed her to a greater risk of developing depression than the general public.

Having determined that the findings of fact are supported by the evidence, we turn to the Full Commission's conclusions of law, which we review *de novo. See Snead v. Carolina Pre-Cast Concrete, Inc.*, 129 N.C. App. 331, 335, 499 S.E.2d 470, 472, *cert. denied*, 348 N.C. 501, 510 S.E.2d 656 (1998). As to the first two elements required for an occupational disease, we hold that the findings support the conclusion that plaintiff's employment exposed her to a greater risk of contracting depression and, as a result, fibromyalgia than the public

## WOODY v. THOMASVILLE UPHOLSTERY, INC.
[146 N.C. App. 187 (2001)]

generally. Moreover, we disagree with defendant that plaintiff's "employment" may accurately be characterized as simply "working as a marketing manager in the furniture industry." Plaintiff's employment, as an assistant to the general manager of marketing and design for a furniture upholstery company, involved: (1) an extremely stressful and verbally abusive relationship with her emotionally unstable supervisor, which caused plaintiff to feel demeaned, embarrassed, humiliated, and worthless; and (2) a workplace environment in which plaintiff justifiably felt powerless over the situation and betrayed by her employer because her employer appeared to care more about the supervisor's financial value to the company than her abusive treatment of employees. In drawing this conclusion, we are mindful that the Supreme Court has stated on numerous occasions that the Workers' Compensation Act is to be construed liberally in favor of awarding benefits. *See Harrell v. Harriet & Henderson Yarns*, 314 N.C. 566, 336 S.E.2d 47 (1985); *Barnhardt v. Cab Co.*, 266 N.C. 419, 146 S.E.2d 479 (1966). Based upon this fundamental principle, we conclude that the term "employment" in *Booker, Hansel,* and *Rutledge* must be interpreted as referring to a plaintiff's particular job, rather than to the type of job.

We further hold that the findings support the conclusion that there was a causal connection between plaintiff's depression (and the resulting fibromyalgia) and her employment, the third element required for an occupational disease. Therefore, we affirm the opinion and award of the Full Commission, concluding that plaintiff's depression and fibromyalgia are compensable occupational diseases.

Affirmed.

Judge HUNTER concurs.

Judge MARTIN concurs in part and dissents in part.

MARTIN, Judge, concurring in part and dissenting in part.

I must respectfully dissent from that portion of the majority opinion which holds that the evidence and the Commission's findings support its conclusions that plaintiff's employment exposed her to a greater risk of contracting depression and fibromyalgia than the public generally and that her depression and fibromyalgia are compensable occupational diseases.

Although the majority correctly cites the definition of an occupational disease, as contained in G.S. § 97-53(13), and our Supreme Court's interpretation of the statute, as contained in *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E.2d 189 (1979) and further explained in *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E.2d 359 (1983), I do not believe the majority or the Commission has correctly applied the law to the facts as found by the Commission. Notwithstanding the fact that plaintiff's job-related stress caused her depression and aggravated her fibromyalgia, such facts cannot support the conclusion that plaintiff's mental and physical conditions were occupational diseases as defined by the statute. The findings indicate merely that plaintiff suffered from depression and fibromyalgia after being placed in the unfortunate position of working for an abusive supervisor, which can occur with any employee in any industry or profession, or indeed, in similar abusive relationships outside the workplace. Therefore, I do not believe plaintiff's conditions can be construed as "characteristic of and peculiar to" her particular employment; they are ordinary diseases, to which the general public is equally exposed outside the workplace in everyday life. *See Rutledge*, 308 N.C. at 93, 301 S.E.2d at 365 ("Only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded.") In my view, to hold these conditions to be occupational diseases compensable under G.S. § 97-53(13), under the facts of this case, stretches beyond the intent of the Workers' Compensation Act. Thus, I would reverse the award of compensation.

I concur with the majority with respect to the results reached as to defendant's remaining assignments of error.