***********
Having reviewed the competent evidence of record, the Full Commission reverses the Opinion Award of the Deputy Commissioner and finds that plaintiff did not sustain an occupational disease under G.S. §97-53(13).
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 15 August 1998, an employment relationship existed between plaintiff-employee and defendant-employer.
3. At all times relevant to this claim defendant has been and is self-insured.
4. The parties stipulate plaintiff's average weekly wage is sufficient to yield $532.00 per week, the maximum compensation rate for 1998.
5. Plaintiff's medicals from UNC Hospital are admitted into evidence as Stipulated Exhibit # 1.
6. Plaintiff's medical records from Duke University Medical Center are admitted into evidence as Stipulated Exhibit # 2.
7. Plaintiff's personnel records from defendant are admitted into evidence as Stipulated Exhibit # 3.
8. Employee Occupational Health Service and/or Employee Assistance Department records are admitted into evidence as Stipulated Exhibit # 4.
9. Dr. Nancy Roman's correspondence is admitted into evidence as Stipulated Exhibit # 5.
10. Medical bills for treatment of plaintiff are admitted into evidence as Stipulated Exhibit # 6.
11. Excerpts from defendant's long-term disability booklet are admitted into evidence as Stipulated Exhibit # 7.
12. Paycheck attachments are admitted into evidence as Stipulated Exhibit # 8.
13. Long-term disability plan check attachments are admitted into evidence as Stipulated Exhibit # 9.
14. Industrial Commission Forms including Form 22 and the Order filed 13 February 2001 by the undersigned allowing plaintiff to amend the Forms 18 and 33 to reflect 15 August 1998 as the disability date, are admitted into evidence as Stipulated Exhibit # 10.
The issues to be determined by this hearing are:
 1.) Whether plaintiff contracted an occupational disease in the course and scope of her employment within the meaning of G.S. § 97-53(13).
 2.) Whether the treatment rendered by Dr. Nancy Roman tendered to effect a cure or give plaintiff relief and should be paid by defendant, and whether plaintiff is entitled to future medical compensation; and
 3.) Whether defendant is due an offset against the accrued total disability benefits paid to plaintiff; and
 4.) Whether plaintiff is entitled to attorney's fees pursuant to G.S. § 97-88.1
 ***********
Based upon all of the competent evidence of record, the undersigned makes the following additional
 FINDINGS OF FACT
1. On 15 August 1998, plaintiff was 45 years old and employed by defendant as a registered nurse. Plaintiff worked continuously in this capacity from 17 May 1973 until her last date of work, 15 August 1998. Plaintiff has not been employed since she left her job with defendant.
2. Plaintiff did not testify. Without objection, plaintiff's husband testified about her problems while working at defendant hospital. Plaintiff's husband had little or no firsthand knowledge of what was occurring at the hospital; his testimony was primarily based on what plaintiff had told him.
3. Plaintiff has been diagnosed with a major depressive disorder, recurrent, severe, with melancholy features and dysthymic disorder. Dr. Nancy Roman is her treating psychologist. Dr. Roman began private practice in 1996. She did not begin treating plaintiff until late 1998. Dr. Roman did not keep notes and did not appreciate plaintiff's complaints about her employment until plaintiff began talking about them in 2001, around the time that Dr. Roman was to be deposed. This was long after the events which culminated in plaintiff's disability leave beginning in 1998. It was clear to Dr. Roman that the causes of plaintiff's disorder were employment stressors and personal stressors, including the deaths of her father and half-sister. The death of her father was particularly difficult because she had recommended defendant hospital for his treatment and she felt that his care had not been adequate. The primary focus of Dr. Roman's treatment was keeping plaintiff alive, as plaintiff was suicidal and initially required hospitalization.
4. From 1989 through 1992, plaintiff was employed as a registered nurse in the Hanes Ward at defendant hospital. Many of the patients were terminally ill, and plaintiff was exposed to many deaths. Dr. Roman mentioned that this was a difficult period for plaintiff. However, a review of the evidence indicates that this factor was not a significant one in the development of plaintiff's depressive disorder. Plaintiff liked her job as a nurse and took pride in patient care and doing a good job. It was the personnel activities with which plaintiff had difficulty coping and which caused her depression. Dr. Roman also noted that plaintiff's condition (as relayed to her by plaintiff, after the fact) was worse after 1993.
4. During 1992 and 1993, Hanes Ward was closing, and there was a period of reorganization at defendant hospital. Plaintiff moved to Duke North as a part of a merged nursing staff to attend to patients in a combined facility of operating rooms. Plaintiff and other nurses were given new duties caring for surgical patients, and plaintiff did not believe that she had adequate training for post-surgical work. Plaintiff felt that the hospital was understaffed and that she, particularly when acting as charge nurse, was required to do more than she could handle. This situation was stressful for her. Plaintiff believed that patients were being treated as "customers" and that the quality of care as she knew it was deteriorating. Plaintiff did not adjust well to a managed care approach. As a result, she was frustrated and under stress.
5. Plaintiff was involved in disputes with doctors and other supervisors. A doctor yelled at her. A supervisor assumed that she had done something wrong without asking her first. Information was placed in plaintiff's personnel file that plaintiff challenged and was successful in having removed. Defendant's adverse weather policy caused plaintiff worry and stress; she felt that she had to show up at work even though the roads were unsafe for travel.
6. Plaintiff would speak up when she perceived that something was not "right." A supervisor friend, who lost her job, warned plaintiff that she needed to be careful. Plaintiff felt that she was subjected to race discrimination and that she was being watched. She did not understand why she was not offered many of the jobs that she applied for with defendant.
7. During a transition from the old hospital to the new, plaintiff was required to reapply for a job in the new units. Plaintiff was initially passed over, but finally was given a position. This reapplication process caused plaintiff stress and worry. Plaintiff did not have the same shift each week. Having different shifts seemed to make it more difficult for her to get adequate sleep because of preexisting insomnia.
8. Plaintiff suffered from depression as a result of her perception that defendant's procedures were unjust and the workload unjustified, her concern about the economic consequences of losing her position and benefits, her fear that she would lose the career which she highly valued, her perception that her skills as a nurse were not appreciated, and her perception that she was being "watched" and was not being treated fairly.
9. Plaintiff seriously considered but declined an early retirement/severance package designed by defendant to induce senior, better-compensated employees to resign. After plaintiff declined this offer, she became concerned the defendant was motivated to discharge her.
10. Plaintiff was exposed to Hepatitis C in 1995, which upset her because her mother suffered with the disease. Plaintiff also strained her back in 1997 while moving a stretcher. Dr. Roman indicated that the exposure to Hepatitis C would probably have been the most stressful of her physical injuries, but also stated that plaintiff never really talked about the physical injuries, and she did not know how stressful they were to plaintiff. It was the workload and sense of being undervalued that led to the depressive disorder.
11. Dr. Roman testified that plaintiff's employment stressors substantially contributed to the development of plaintiff's depressive disorder and placed her at a greater risk than the public in general of contracting this disease.
12. The Full Commission finds that plaintiff's employment stressors — the personnel conflicts, a demanding workload, job security issues, and her feelings of being undervalued as a professional — did cause or substantially contribute to her depressive disorder. The Commission further finds that these stressors are not characteristic of nursing work as opposed to occupations in general and that her employment as a nurse did not place her at an increased risk of contracting a depressive disorder as opposed to the general public not so employed.
 ***********
The foregoing findings of fact, and conclusion of law engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff's depressive disorder was not due to causes and conditions characteristic of and peculiar to plaintiff's employment with defendant as a nurse; rather, her psychological condition is an ordinary disease of life to which the general public, not so employed, is equally exposed. Plaintiff, therefore, has failed to prove that she sustained an occupational disease. G.S. § 97-53(13); see Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
2. The Workers' Compensation Act was never intended to be a general accident and health insurance policy. Weaver v. Swedish ImportsMaintenance, 319 N.C. 243, 354 S.E.2d 477 (1987). Company decisions concerning reorganization and restructuring, conflicts between supervisors and employees, concerns about job stability, salary, and promotions or transfers, being passed over for jobs, and other personnel issues and events are experiences common to many if not all employees at some time in their work history and are not characteristic of any particular employment. An employee's psychological response to such circumstances is not compensable as an occupational disease. G.S. §97-53(13); see Woody v. Thomasville Upholstery, 355 N.C. 483,562 S.E.2d 422 (2002), rev'g per curiam for reasons stated in JudgeMartin's dissent, 146 N.C. App. 187, 552 S.E.2d 202 (2001).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Under the law, Plaintiff's claim must be and is hereby denied.
2. Each side shall pay their own costs, except that Defendants shall pay the expert witness fees previously assessed.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER