***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award; therefore, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That the date of the injury which is the subject of this claim is October 27, 2001.
2. That on such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act;
3. That on such date, the Employer-Employee relationship existed between the Employee-Plaintiff and the Employer-Defendant;
4. That on such date, the Employer-Defendant employed three or more employees;
5. That Employer-Defendant is insured by ESIS Insurance Company.
6. The plaintiff's average weekly wage will be determined upon defendant's production of a Form 22.
7. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit #1 — Plaintiff's Recorded Statement
b. Stipulated Exhibit #2 — Plaintiff's Medical Records
8. The deposition of W. J. Martin, M.S., D.O. is a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. The Findings of Fact made in the Interlocutory Opinion and Award of Deputy Commissioner Stanback that was filed on September 12, 2002, are adopted and incorporated herein by reference.
2. Following his compensable injury by accident of October 27, 2001, plaintiff received treatment with Dr. Jeffrey C. Beane, an orthopedic surgeon in Greensboro. Plaintiff reported an onset of back and leg pain following the accident. Dr. Beane ordered an MRI and took plaintiff out of work pending an evaluation at the Piedmont Pain Clinic in Winston-Salem. At plaintiff's request, Dr. Beane agreed to permit him to "work as tolerated" rather than remain out of work.
3. As of December 5, 2001, plaintiff entered into a course of treatment with Dr. W.J. Martin, an anesthesiologist with expertise in the area of pain management. In order to be more accurate as to the source of plaintiff's back pain, Dr. Martin performed a discogram. The discogram revealed defects not detected on the MRI, particularly at the L4-5 and L5-S1 levels of plaintiff's back.
4. Dr. Martin referred plaintiff to Dr. William O. Bell for evaluation for a spinal fusion. Dr. Bell opined that he did not recommend performing one at that time. Dr. Martin believes that a fusion will ultimately be necessary; however, it could be postponed by the use of other medical techniques.
5. Dr. Martin also referred plaintiff to Dr. Webster, a pain psychologist. Dr. Webster found no indication of chemical dependency in plaintiff and approved him for a course of opiate therapy.
6. Dr. Martin proposed a course of treatment involving an intradiscal electrothermal therapy (IDET) procedure. The IDET procedure involves the slow heating of the disc material by insertion of wires into the disc through which heat is passed. The intent of the IDET procedure is to reduce pain by at least 50% percent and improve functioning at home and at work. In addition to the IDET procedure, Dr. Martin proposed a course of physical therapy. If necessary, Dr. Martin would consider the use of a spinal cord stimulator, but his preference is for the IDET procedure, which could be performed either one level at a time or possibly at both L4-5 and L5-S1 simultaneously.
7. Plaintiff initially declined Dr. Beane's recommendation to go out of work, but as a result of his injuries and the resultant pain, plaintiff was incapable of earning the same amount as he was capable of earning prior to his injury. Plaintiff's job required him basically to remain seated at a desk utilizing the telephone for the entirety of his shift. This exceeded Dr. Martin's recommendations insofar as the sitting position creates the most painful situation for a person with plaintiff's type of injury, and standing is only slightly better.
8. On June 10, 2002, Dr. Martin took plaintiff out of work effective June 24 through July 1, 2002, pending an evaluation for physical therapy. The most credible evidence in this matter indicates that Ms. Gwen Scott, the defendant's Director of Corporate Relations, called Dr. Martin's office and obtained a copy of plaintiff's confidential medical file. Ms. Scott testified at hearing that not only had she called Dr. Martin's office, but that she had directed Sarah Totten, plaintiff's immediate supervisor, to do so as well in attempts to obtain plaintiff's medical records. Plaintiff had not tendered a medical release authorization to defendant-employer for this purpose and further had no knowledge that defendant-employer had sought acquisition of his medical records.
9. Following his period of being out of work, plaintiff returned to defendant-employer's premises for his regular work duties. On July 2, 2001, Ms. Totten suspended plaintiff from his employment until Dr. Martin provided "appropriate documentation" "as to the medical reasons you were unable to work from June 24, through July 1, 2002." Neither Ms. Totten nor Ms. Scott advised plaintiff that they had already obtained Dr. Martin's medical records. At no time had plaintiff consented to defendant-employer's contact with Dr. Martin.
10. On July 11, 2002, Ms. Scott informed plaintiff that if he could not produce medical records to her satisfaction by July 22, 2002, plaintiff would be terminated. On July 23, 2002, defendant-employer terminated plaintiff.
11. Although he has diligently sought employment, plaintiff has been unable to find the same within the restrictions imposed by Dr. Martin, to wit: no lifting over ten to fifteen pounds, no sitting or standing in excess of an hour, and no squatting or bending for prolonged periods of time.
12. Dr. Martin is of the opinion that plaintiff's current problems with back pain were caused by the compensable injury by accident of October 27, 2001. Additionally, Dr. Martin is of the opinion that all of the medical treatment he recommended, including the period plaintiff was out of work in June 2002, was medically necessary to effect a cure or provide relief.
13. Dr. Martin further opined that plaintiff would likely benefit from an IDET procedure, further prescription pain management, and a carefully monitored course of physical therapy. Additionally, Dr. Martin opined that plaintiff may need a spinal cord stimulator and/or spinal fusion, both of which would be performed to improve plaintiff's functioning.
14. Defendant-employer's supervisors, Ms. Scott and Ms. Totten, were aware that they did not have plaintiff's consent to make direct contact with his medical care providers. The statements of Ms. Scott and Ms. Totten were made in furtherance of denying plaintiff the benefits due him under the Workers' Compensation Act. Such tactics are unacceptable before the North Carolina Industrial Commission and are in violation of N.C. Gen. Stat. § 97-88.2 and the Rules of the Industrial Commission. Accordingly, these actions taint defendants' entire defense of this claim so that the overall impression is one of stubborn, unfounded litigiousness. A reasonable penalty for defendants' unfounded litigiousness is payment of plaintiff's attorney's fees.
15. Further evidence of defendants' stubborn, unfounded litigiousness can be found in their discovery responses. Defendants objected to each interrogatory served by plaintiff with the same formulaic objection, "This Interrogatory is vague, irrelevant, over-broad and outside the scope of discovery." For example, in response to plaintiff's request to state the name and position of the person answering these interrogatories, defendants replied, "This Interrogatory is vague, irrelevant, over-broad and outside the scope of discovery." In response to plaintiff's query regarding defendant-employer's use of press releases with respect to the "Scare to Care" campaign, defendants made the identical objection, and then responded that none were used. Additionally, defendants did not provide verified responses to the discovery until ordered to do so by the Deputy Commissioner.
16. On April 15, 2002, defendants served plaintiff with the identical objections to each of eleven different interrogatories. On April 26, 2002, defendants supplied its counsel with a copy of a press release concerning the "Scare to Care" campaign as issued by Ms. Scott. Defendants did not immediately amend its discovery responses but rather delayed the same until after the mediation of April 29, 2002, and in fact, waited until the hearing was set before serving a "Supplemental" response. Defendants' supplemental response to the discovery contained the identical objection to the interrogatory but had attached the press release showing a print date of April 26, 2002.
17. Similarly, defendants inaccurately responded to plaintiff's interrogatory regarding advertising. Defendants utilized their standing objection and replied only that "a brief announcement" was made in the Greensboro News and Record. Evidence gathered during the hearing of this matter indicates advertisements were placed in the High Point Enterprise, the Winston-Salem Journal, and the Greensboro News and Record.
18. A reasonable penalty for defendants' false statements in discovery and obtaining plaintiff's medical records with his authorization from Dr. Martin's office is $2,500.00. This amount is fair and reasonable under the facts of this case due to the following:
 a. Both Ms. Scott and Ms. Totten knew they did not have plaintiff's authorization to obtain his medical records at the time of their request to Dr. Martin's office.
 b. The actions of Ms. Scott and Ms. Totten were performed in a concerted effort to deny benefits to plaintiff to which he was entitled and deprived plaintiff of the confidentiality due him and his medical provider.
 c. The false statements in discovery were made by defendant-employer's risk manager, however, he cannot claim ignorance of the inaccurate information he supplied in the discovery responses. While it would not be expected that the risk manager be fully aware of public relations activity regarding the haunted house, it would be expected that he consult with the defendant-employer's Director of Consumer Relations before responding to the interrogatories.
19. Further, defendants failed to produce a Form 22 Statement of Days Worked and Earnings of Injured Employee, as ordered by the Industrial Commission until after the close of the record in this matter. Defendants have offered no explanation as to why they were incapable of preparing a Form 22 as ordered. Nevertheless, based upon calculations from the Form 22 submitted, plaintiff's average weekly wage is $676.06, yielding a compensation rate of $450.72.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Conclusions of Law contained in the Interlocutory Opinion and Award by Deputy Commissioner Stanback filed on September 24, 2002, are adopted and incorporated herein by reference.
2. Plaintiff sustained a compensable injury to his back on October 27, 2001. N.C. Gen. Stat. § 97-2(6).
3. As a result of his compensable injury, plaintiff is entitled to the payment of all medical expenses incurred as a result of his injury by accident to the date of this Award and continuing in the future, for so long as the expenses for his medical treatment are necessary to effect a cure, provide relief and/or lessen his period of disability. N.C. Gen. Stat. § 97-25.
4. Based on the Form 22 submitted, plaintiff's average weekly wage is $676.06, yielding a compensation rate of $450.72. Said Form 22 was not submitted in the time frame ordered by the Deputy Commissioner. N.C. Gen. Stat. § 97-2(5), NCIC Rule 802.
5. In a hearing before the Industrial Commission, the evidence which tends to support plaintiff's claim should be considered in the light most favorable to him or her, and he or she is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Doggett v.South Atlantic Warehouse Co., 212 N.C. 599, 194 S.E. 111 (1937);Hildebrand v. McDowell Furniture Co., 212 N.C. 100, 193 S.E. 294 (1937). The Workers' Compensation Act is required to be construed liberally to effectuate its purpose to provide compensation for injured workers. Its benefits should not be denied by a technical, narrow or strict construction. Stevenson v. City of Durham, 281 N.C. 300, 188 S.E.2d 281
(1972); Holloman v. City of Raleigh, 273 N.C. 240, 159 S.E.2d 874 (1968).
6. As a result of his compensable injury by accident, plaintiff is entitled to temporary partial disability compensation from October 27, 2001, through June 23, 2002, based upon an average weekly wage of $676.06. N.C. Gen. Stat. § 97-30.
7. As a result of his compensable injury by accident, plaintiff is entitled to temporary total disability compensation from June 24, 2002, at a rate of $450.72 per week until further Order of the Industrial Commission or until plaintiff returns to work earning wages greater than or equal to his average weekly wage. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to treatment from Dr. W.J. Martin to the extent that it is reasonably intended to effect a cure or provide relief of plaintiff's symptoms associated with his compensable injury by accident. All treatment rendered by Dr. Martin thus far has been necessary to effect a cure or to provide relief. Treatment authorized specifically includes, but is not limited to, the IDET procedure as recommended by Dr. Martin, physical therapy, prescription medications, and ongoing pain management as recommended by Dr. Martin or by physicians to whom Dr. Martin refers plaintiff. N.C. Gen. Stat. § 97-25.
9. Defendants are liable for the whole cost of this proceeding, including reasonable attorneys' fees for plaintiff's counsel due to their bringing and prosecuting this hearing without reasonable ground. N.C. Gen. Stat. § 97-88.1. See Lewis v. Sonoco Products Co., 137 N.C. App. 61
(2000), Troutman v. White Simpson, 121 N.C. App. 48 (1995).
10. A reasonable penalty for defendants' actions in obtaining plaintiff's medical records without his authorization and false statements made during discovery is $2,500.00. N.C. Gen. Stat. § 97-88.2. See Shahv. Howard Johnson, I.C. 607231, 140 N.C. App. 58 (2000) ($2,500.00 penalty for filing wrong Industrial Commission form without any allegation of fraud at all); Woody v. Thomasville Upholstery Inc, 146 N.C.App. 187,552 S.E.2d 202 ($2,585.00 penalty under NCIC Rule 802 for violation of discovery order without allegation of any fraud at all); Holley v. EascoAluminum, I.C. 578379 ($10,000.00 penalty for filing a Form 28B before plaintiff actually returned to work, a misrepresentation of material fact made to the Industrial Commission).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission AFFIRMS the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary partial disability benefits from October 27, 2001 through June 23, 2002 based upon an average weekly wage of $676.06.
2. Defendants shall pay plaintiff temporary total disability benefits at the rate of $450.72 per week from June 24, 2002 until plaintiff returns to work earning the same or greater wages or until further Order of the Industrial Commission.
3. All compensation that has accrued shall be paid to plaintiff in a lump sum, which shall not be subject to an attorney's fee. Thereafter, defendants shall pay plaintiff weekly benefits which are likewise not subject to an attorney's fee.
4. Defendants shall pay all medical expenses incurred by plaintiff to date for treatment of his back. Defendants shall pay all future reasonable medical expenses incurred by plaintiff for the treatment of his back including, but not limited to, an IDET procedure, physical therapy, and prescription medications, and ongoing pain management as recommended by Dr. Martin or by physicians to whom Dr. Martin refers plaintiff.
5. Dr. Martin is hereby designated as plaintiff's primary treating physician.
6. Plaintiff is entitled to payment of reasonable attorney's fee pursuant to N.C. Gen. Stat. § 97-88.1. This fee shall be in addition to the payments made to plaintiff and shall not be deducted from same. Defendants shall pay to plaintiff's counsel an amount equal to twenty-five percent (25%) of the amounts awarded to plaintiff in Paragraphs 1 and 2 of this AWARD. All attorney fees that have accrued shall be paid in one lump sum, and shall be paid on a weekly basis thereafter for all future benefits due plaintiff.
7. Defendants shall, within thirty (30) days of the filing of this Opinion and Award, pay a fine of $2,500.00 to the Industrial Commission for its violation of N.C. Gen. Stat. § 97-88.2 and the Rules of the Industrial Commission.
8. Defendants shall pay the costs due the Commission.
This the ___ day of August 2003.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER