Under appropriate circumstances, work-related depression or other mental illness may be a compensable occupational disease.See Jordan v. Central Piedmont Comm. College, 124 N.C. App. 112,476 S.E.2d 410 (1996). However, the claimant must prove that the mental illness or injury was due to stresses or conditions different from those borne by the general public. See Woody v.Thomasville Upholstery, Inc., 355 N.C. 483, 562 S.E.2d 422 (2002) (adopting dissent in 146 N.C. App. 187, 202, 552 S.E.2d 202, 211
(2001)). Thus, the claimant must establish both that his psychological illness is `due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment' and that it is not `an ordinary disease of life to which the general public is equally exposed.' Id. (citing toBooker v. Medical Center, 297 N.C. 458, 468, 256 S.E.2d 189, 196
(1979) (quoting N.C. Gen. Stat. § 97-53(13) (2001))).
The majority, in applying the above standard, found that plaintiff's mental disorders were not causally related to his duties as a utility operator for defendant-employer, and thus not occupational diseases. However, the majority has erred in ignoring the credible evidence of record establishing that plaintiff's mental disorders were a consequence of the high degree of emotional stress to which plaintiff was subjected by his supervisor and coworkers. The majority, it its analysis ofWoody as it relates to N.C. Gen. Stat. 97-53(13), has created a presumption that any type of mental injury causally related to typical work-related stress cannot be compensable no matter how great or severe that stress may be. The majority fails to consider that typical work-related stress can exceed a threshold in which it surpasses the normal level of work-related stress as borne by the general public.
The evidence of record shows that plaintiff was exposed to a high degree of stress that exceeded what one would term as typical work-related stress. Although it was proper for defendant-employer to conduct an investigation when it learned company property was missing, the evidence shows that defendant-employer overreacted in the immediate suspension of plaintiff when it had no evidence to link plaintiff with the theft or loss of such property. After plaintiff was notified by his supervisor and Andrea Hughes, of defendant-employer's Human Resources Department, that he was being placed on "crisis suspension" while an investigation took place, plaintiff was escorted by a security guard to his locker and was ordered to clean it out. Plaintiff was than escorted by guard in the presence of his co-workers through defendant-employer's plant to the parking lot. There, the guard scraped off the company parking sticker from plaintiff's truck and instructed plaintiff to immediately leave the premises. The following week, plaintiff was contacted by Ms. Hughes and told he could return to work on "decision-making leave."
When plaintiff returned to work while defendant-employer's investigation proceeded, plaintiff was questioned by other employees. Plaintiff witnessed co-workers taunting him and pointing him out to fellow employees. He began to receive hang up calls at his house that were placed from company telephone numbers. During one such call, plaintiff was called a "thief" before the call was terminated. During this time, plaintiff experienced severe emotional distress and was unable to sleep. Although defendant-employer eventually concluded there was no evidence to link plaintiff with the lost or stolen company property, plaintiff continued to experience symptoms of severe fatigue, fear, and panic. He reported such problems to Human Resources Personnel Manager Monroe Phelps, who referred plaintiff to the Employee Assistance Program. Through such program, plaintiff eventually came under the care of Dr. William Koff, a psychiatrist.
Upon treating with Dr. Koff, plaintiff gave a history of the theft accusation made against him at work, his subsequent suspension, and his being "devastated" about such events. Dr. Koff diagnosed plaintiff with an adjustment disorder with mixed features and characterized the incidents surrounding plaintiff's work suspension as a "psychiatric trauma." Dr. Koff testified that plaintiff's symptoms were consistent with the history he had given, and the work-related incidents were a causal factor in the development or aggravation of plaintiff's psychiatric symptoms.
Plaintiff later came under the treatment of another psychiatrist, Dr. Robert Weinstein, who diagnosed plaintiff with "major depression with obsessions," which stem from the emotional "shame and humiliation, and abandonment" that plaintiff experienced as a consequence of the work-related events. Like Dr. Koff, Dr. Weinstein characterized the incidents surrounding plaintiff's work suspension as a "psychiatric trauma," and opined that such incidents were the cause of plaintiff's psychiatric conditions. Dr. Weinstein explained during deposition that "any time you have a surprise humiliating experience, it can lead to psychiatric sequelae." Dr. Weinstein testified that members of the general public are not equally exposed to being publicly removed from work and accused of stealing company property without evidence. Dr. Weinstein further opined that, but for the work-related events, plaintiff would not likely have developed the psychiatric conditions from which he suffers. Lastly, Dr. Weinstein testified that plaintiff has reached maximum medical improvement, but will have great difficulty in maintaining employment because of his significant "anxiety, depression, paranoia, and agoraphobia" that stem from the work-related events. Dr. Weinstein stated: "I feel he's permanently and totally disabled from all kinds of work."
As the North Carolina Supreme Court stated in Johnson v.Asheville Hosiery, Co., 199 N.C. 38, 153 S.E. 591 (1930), the Worker's Compensation Act is to be liberally construed to effectuate the broad intent of the Act to provide compensation for employees sustaining an injury arising out of and in the course of the employment, and no technical or strained construction should be given to defeat this purpose. Id. Based on the majority's analysis of Woody as it relates to N.C. Gen. Stat. § 97-53(13), the majority has erred in failing to award compensation to plaintiff, despite the credible evidence of record that it was work-related stress, and such stress alone, that caused plaintiff to develop his psychiatric conditions. This Commission cannot idly permit employers to subject employees to abnormal and severe levels of stress without recognizing that typical work-related stress can exceed a threshold in which it surpasses the normal level of work-related stress as borne by the general public. The intent of the Workers Compensation Act will not be upheld until this Commission, the courts, or the General Assembly finds that injury or disease resulting from severe levels of stress in the workplace can be compensable when supported by credible evidence. For these reasons, I respectfully dissent from the majority's Opinion and Award in this matter.
This 21st day of May 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER