577 S.E.2d 902 (2003)
Dorothia SMITH, Plaintiff-Employee,
v.
BEASLEY ENTERPRISES, INC/RED APPLE, Defendant-Employer, and
Managed Care, USA, Defendant-Carrier.
No. COA01-325.
Court of Appeals of North Carolina.
March 20, 2002.
Law Offices of Robert J. Willis, by Robert J. Willis, Raleigh, for plaintiff-appellant.
Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Jennifer Ingram Mitchell, for defendant-appellee.
*903 WALKER, J.
Plaintiff filed a workers' compensation claim on 22 April 1998 seeking benefits for her carpal tunnel syndrome which she alleges is an occupational disease. The deputy commissioner denied her claim and, on 15 December 2000, the Full Commission (Commission) issued an opinion and award affirming the deputy commissioner's holding.
The relevant facts as found by the Commission show the following: In 1988, plaintiff began employment as a deli worker in a convenience store owned by defendant. Her various job responsibilities included washing pieces of chicken and trimming any excess fat from them. To do this, plaintiff held the chicken piece in her left hand and used a knife with her right hand. During a normal workday, this task took between two to three hours to complete.
In June 1993, during an annual physical examination, plaintiff reported pain and numbness in both hands. However, no diagnosis was made at that time. On 20 January 1998, plaintiff sought treatment at Rich Square Medical Center. She reported to a physician's assistant, Delina Cooley (Ms. Cooley), that she had difficulty grasping items with her hands and that she had problems sleeping due to pain in her hands. After examining plaintiff, Ms. Cooley referred her to East Carolina Neurology in Greenville for nerve conduction studies. The referral was confirmed by Ms. Cooley's supervising physician, Dr. Gilberto Navarro (Dr. Navarro).
In March 1998, Dr. Rakesh Jaitley (Dr. Jaitley), a neurologist with East Carolina Neurology, performed nerve conduction studies on plaintiffs hands and arms. These studies suggested that she suffered from bilateral distal median entrapment neuropathy (carpal tunnel syndrome). Plaintiff notified defendant of this diagnosis. Shortly thereafter, she received steroid injections in her wrists.
On 1 September 1998, plaintiff was evaluated by Dr. John R. Leonard, III (Dr. Leonard), a neurosurgeon at East Carolina Neurosurgical Associates, at which time she complained that her symptoms were more severe in her left hand. Consequently, Dr. Leonard performed carpal tunnel decompression surgery on plaintiffs left arm. Following this surgery, Dr. Leonard instructed plaintiff to return to him if she had any further problems with her left hand or if she wanted to schedule surgery for her right hand. After a follow-up evaluation, Dr. Leonard opined that plaintiff had normal median nerve function in her left hand, and on 30 November 1998, he released her to return to regular duty work. Plaintiff had no further contact with Dr. Leonard, and she has not worked for defendant since June 1998.
We summarize plaintiffs assignments of error as two issues: (1) whether the Commission impermissibly disregarded the testimony of plaintiffs medical witnesses; and (2) whether the Commission erred in concluding that plaintiff had failed to establish her carpal tunnel syndrome as an occupational disease.
On appeal, the standard of review for a workers' compensation case is whether there is any competent evidence in the record to support the Commission's findings and whether these findings support the Commission's conclusions. Sidney v. Raleigh Paving & Patching, 109 N.CApp. 254, 426 S.E.2d 424 (1993). If the Commission's findings are supported by competent evidence, they are to be upheld even if the record presents evidence which would support contrary findings. Id. Thus, this Court's role is to determine whether competent evidence exists to support the Commission's findings and whether those findings justify its conclusions and award. Simmons v. N.C. Dept. of Transportation, 128 N.C.App. 402, 496 S.E.2d 790 (1998).
Plaintiff first asserts the Commission failed to consider the causation testimonies of Ms. Cooley, Dr. Jaitley and Dr. Navarro when it concluded she did not establish her carpal tunnel syndrome as an occupational disease. In making her assertion, plaintiff relies on this Court's precedent that the Commission must consider and weigh all competent evidence. Jenkins v. Easco Aluminum Corp., 142 N.CApp. 71, 541 S.E.2d 510 (2001); Lineback v. Wake County Board *904 of Commissioners, 126 N.C.App. 678, 486 S.E.2d 252 (1997); and Weaver v. American National Can Corp., 123 N.CApp. 507, 473 S.E.2d 10 (1996). She maintains that because the Commission's findings do not specifically reference her medical expert's opinion testimony, it impermissibly disregarded competent evidence.
The record shows the parties stipulated into evidence plaintiffs medical records from Rich Square Medical Center and Dr. Leonard. The Commission also had before it the depositions of Ms. Cooley, Dr. Jaitley, Dr. Navarro and Dr. Leonard. Furthermore, the Commission's opinion and award states that its decision was based upon the "entire record of evidence" and the "briefs and arguments" of the parties.
This Court has ruled that the Commission "must make `definitive findings to determine the critical issues raised by the evidence,'... and in doing so must indicate in its findings that it has `considered or weighed' all testimony with respect to the critical issues in the case." Bryant v. Weyerhaeuser Co., 130 N.CApp. 135, 139, 502 S.E.2d 58, 62, disc, review denied, 349 N.C. 228, 515 S.E.2d 700 (1998) (internal citations omitted). However, the Commission is not required to make "exhaustive findings as to each statement made by any given witness or make findings rejecting specific evidence...." Id. The Commission must make findings from which this Court may reasonably infer that it gave proper consideration to all relevant testimony. Jenkins, 142 N.CApp. at 78-79, 541 S.E.2d at 515 (citing Pittman v. International Paper Co., 132 N.CApp. 151, 510 S.E.2d 705, affirmed 351 N.C. 42, 519 S.E.2d 524 (1999)).
In Jenkins and Lineback, we held the Commission did not give proper consideration to the causation testimony of the plaintiffs' medical experts where the findings made no mention of the experts nor presented any evidence from which we could have reasonably inferred that it had considered their testimony. Id; and Lineback, 126 N.CApp. at 680-81, 486 S.E.2d at 254. Likewise, in Weaver, we held the Commission failed to consider the causation testimony of the plaintiffs co-workers where its findings made no mention of the co-workers, yet specifically stated the plaintiff had not proven causation. Weaver, 123 N.C.App. at 510-11, 473 S.E.2d at 12. In contrast, the Commission here in its findings specifically refers to evidence offered by Ms. Cooley and Dr. Jaitley. From this, we conclude that the Commission considered the evidence presented from these two witnesses.
Although the Commission's findings do not mention any evidence from Dr. Navarro, the record reveals that, upon cross-examination, he testified that he had never examined plaintiff, was unaware of her specific job duties, and that he did not have an opinion to any degree of medical certainty as to the cause of plaintiffs carpal tunnel syndrome. As such, any causation testimony from Dr. Navarro was not sufficiently reliable as to constitute competent medical evidence. See Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914-15 (2000) (a medical expert's opinion testimony must be sufficiently reliable to qualify as competent evidence). Therefore, we conclude the Commission was not required to consider his testimony. See Lineback, 126 N.C.App. at 680, 486 S.E.2d at 254 (the Commission "may not wholly disregard or ignore competent evidence")(emphasis added). We further conclude the Commission's findings indicate that it considered all competent evidence with respect to the critical issues in this case.
Plaintiff next contends the Commission erred in concluding that she had failed to establish her carpal tunnel syndrome as an occupational disease. Under our workers' compensation statute, an occupational disease is:
Any disease, other than hearing loss ..., which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.
N.C. Gen.Stat. § 97-53(13)(1999). Based on this statutory language, our Supreme Court has identified three elements which an employee must show in order to prove the *905 existence of an occupational disease: (1) the disease is characteristic of a trade or occupation; (2) the disease is not an ordinary disease of life to which the public is equally exposed; and (3) proof of a causal connection between the disease and the employment. Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981).
Plaintiff maintains that the opinions provided by Ms. Cooley, Dr. Jaitley and Dr. Navarro provide competent medical evidence sufficient to satisfy the three elements annunciated in Hansel. We disagree.
The record shows the opinions proffered by these witnesses were in response to a hypothetical question posed by plaintiffs counsel. However, defendant correctly points out that the hypothetical question inaccurately describes plaintiffs job responsibilities. Although Ms. Cooley and Dr. Jaitley examined plaintiff, they were unable to recall with specificity her job responsibilities. Therefore, the Commission properly concluded that plaintiff had failed to provide competent medical evidence establishing her carpal tunnel syndrome as an occupational disease. We have reviewed plaintiffs remaining assignments of error and find them to be without merit. The opinion and award of the Commission is affirmed. Affirmed.
Judges WYNN and THOMAS concur.