I respectfully dissent from the majority opinion for three reasons: (1) plaintiff has not established that he has asbestosis; (2) plaintiff's death claim is not properly before the Commission; and (3) plaintiff's death claim would be barred by § 97-61.6.
 PLAINTIFF HAS NOT ESTABLISHED ASBESTOSIS
I disagree with the majority's conclusion that plaintiff has asbestosis. "Asbestosis" is statutorily defined as "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust." N.C. Gen. Stat. § 97-62. Asbestosis is a medical condition that is to be determined by current, medically accepted standards of diagnosis. The medically accepted standards for the diagnosis of asbestosis are contained in The Diagnosis of Nonmalignant DiseasesRelated to Asbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986). The North Carolina Workers' Compensation Act places the burden on the plaintiff to establish that his claim is compensable by a preponderance of the competent evidence. In a similar fashion the medical standards for a differential diagnosis require that the physician have all available medical evidence necessary to make the diagnosis and that the doctor consider and be able to preclude other potential causes for the disease or condition. SeeWestberry v. Gislaved Gummi, 178 F.3d 257 (4th Cir. 1999).
The American Thoracic Society has determined that the diagnosis of "asbestosis" is a judgment based on a careful consideration of all relevant clinical findings. The Diagnosis of Nonmalignant DiseasesRelated to Asbestos, 134 American Review of Respiratory Disease 363 (Adopted by American Lung Association, March 1986). According to the American Thoracic Society, the diagnosis of asbestosis requires:
A reliable history of exposure, and
 An appropriate time interval between exposure and detection, with[1]
 Chest roentgenographic evidence of type "s," "t," "u," small irregular opacifications of a profusion of 1/1 or greater,
 A restrictive pattern of lung impairment with a forced vital capacity below lower limit of normal,
 A diffusing capacity below the lower limit of normal, and/or
 Bilateral late or pan inspiratory crackles at the posterior lung bases not cleared by cough.
The American Thoracic Society (ATS) acknowledged that interstitial fibrosis might be present without any of the other criteria (one of more of items 3 through 6, listed above); however, it was recommended that a clinical diagnosis could not be made without the other criteria. Id.
The medical evidence does not allow the testifying physicians, let alone the Commission, to opine that plaintiff has asbestosis. See Youngv. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Smith v. BeasleyEnterprises, ___ N.C. App. ___, 577 S.E.2d 902, 2002 WL 32058428 (2002) (Commission should review witness' testimony to determine that it is competent); See also Daubert v. Merrell Dow Pharmaceuticals, Inc.,509 U.S. 579, 113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). Although there is evidence to support a finding that plaintiff had exposure to asbestosis with sufficient latency to potentially produce asbestosis, there is no competent evidence to support the third through sixth criteria under the American Thoracic Society (ATS) standard for diagnosis of asbestosis. First, plaintiff's x-rays are either negative for any parenchymal abnormalities consistent with pneumoconiosis or at most reveal a 1/0 profusion rating; findings which are below the minimum 1/1 profusion rating required by the American Thoracic Society standard.[2] Second, plaintiff's pulmonary function testing does not establish the fourth and fifth criteria of the ATS standard. Dr. Proctor's pulmonary function test reveals that plaintiff has severe obstructive disease, most likely secondary to plaintiff's unrelated emphysema; however, it does not reveal any restrictive defect associated with asbestosis.[3] Finally, Dr. Proctor testified that plaintiff did not have any crackles. Nor did plaintiff exhibit clubbing or other symptoms associated with asbestosis, as opposed to emphysema or other unrelated condition.
The issue before the Commission is whether plaintiff has "asbestosis," not merely whether there is evidence that he was exposed to asbestos or has other asbestos-related disease or condition. Without competent medical evidence to allow the diagnosis of asbestosis under the medically accepted ATS standard, the Commission cannot find that plaintiff has asbestosis. See Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000) (speculation and conjecture is not evidence); Smithv. Beasley Enterprises, ___ N.C. App. ___, 577 S.E.2d 902, 2002 WL 32058428 (2002) (Commission should review witness' testimony to determine that it is competent); See also Daubert v. Merrell Dow Pharmaceuticals,Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993) (court has duty to police the evidence to ensure that it is scientifically credible). Findings that are "consistent with" asbestosis may cause the physician to consider this potential diagnosis; however, the fact that certain evidence is "consistent with" asbestosis is not sufficient to allow us to find that plaintiff, in fact, has asbestosis, when the medical evidence fails to meet the required elements for the diagnosis of this condition under the ATS standard for clinical diagnosis. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003); Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000). Further, the majority should have to explain how the opinions of physicians selected by counsel to perform screening examinations for a potential diagnosis should take precedence over the records of plaintiff's treating physician. Moreover, in this case, the evidence fails to substantiate the third through sixth elements of the ATS standard; therefore, any "opinion" that plaintiff has asbestosis is not based on competent evidence. See Holley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003); Young v. Hickory Business Furniture, 353 N.C. 227,538 S.E.2d 912 (2000).
 DEATH CLAIM NOT BEFORE COMMISSION
Due process requires notice of the issues and the opportunity to be heard. See McDonalds Corp. v. Dyer, 338 N.C. 445, 450 S.E.2d 888 (1994); Woody v. Thomasville Upholstery, 146 N.C. App. 187, 552 S.E.2d 202
(2001), reversed on additional issues, 355 N.C. 483, 562 S.E.2d 422
(2002); Goff v. Foster Forbes Glass, 140 N.C. App. 130, 535 S.E.2d 602
(2000); Article I, § 17 North Carolina Constitution. In a workers' compensation case, the due process notice that an issue is in controversy before the Commission generally arises from the filing of a Form 33, Form 33R, or the pre-trial agreement presented by the parties at the deputy commissioner hearing.
In this case, plaintiff-decedent, Herby S. Payne, was alive on May 3, 2000, and testified at the deputy commissioner hearing, and thereby the compensability of his death was not at issue at the time that the evidence was presented to the deputy commissioner. Mr. Payne died on October 16, 2000. In September 2001, an amended Form 18B was filed naming the administratrix as the party plaintiff succeeding the interest of the deceased plaintiff. The Form 18B, however, does not identify death benefit beneficiaries. Plaintiff did not file an amended Form 33 seeking to add the issue of death benefits, did not seek to amend the issues in the pre-trial agreement, or otherwise take timely action to seek to join the issue of the compensability of plaintiff's death before the evidentiary record closed. The deputy commissioner's Opinion and Award refused to address whether plaintiff's death was compensable, stating:
 "Subsequent to the hearing, Mr. Payne died. His estate was the substituted as party plaintiff. At no time were Mr. Payne's dependents added as parties plaintiff, and the existing parties did not submit additional stipulations adding issues for decision regarding Mr. Payne's death. The Pre-Trial Agreement submitted by the parties did not list death benefits as an issue to be decided since Mr. Payne was still alive at that time. Although not the proper party, plaintiff has attempted to raise the issue of death benefits through contentions and defendants have objected to a ruling on that issue. Under these circumstances, it appears that defendant's objection should be sustained, and it has been sustained."
The file does not indicate that plaintiff ever properly asked the deputy commissioner to amend the claim to include the issue of death benefits, and there is no indication that any person other than the Estate of the deceased plaintiff has filed a claim.[4] Before the Full Commission the defendants assert that the plaintiff did not file the amended Form 18B until after the depositions had been completed and the record closed, the issue of cause of death was not addressed in the pre-trial and was not an issue before the deputy commissioner, and that defendants were not afforded proper notice and opportunity to investigate and present evidence on this issue.
Under the facts of this case, defendants were not afforded proper notice that the cause of plaintiff's death was in litigation before the deputy commissioner. Because the majority has decided to render a decision based on the record before the deputy commissioner, when this issue was not before the deputy, defendants' due process rights of notice and opportunity to be heard have been violated. See McDonalds Corp. v.Dyer, 338 N.C. 445, 450 S.E.2d 888 (1994); Woody v. ThomasvilleUpholstery, 146 N.C. App. 187, 552 S.E.2d 202 (2001), reversed onadditional issues, 355 N.C. 483, 562 S.E.2d 422 (2002); Goff v. FosterForbes Glass, 140 N.C. App. 130, 535 S.E.2d 602 (2000); Article I, §17 North Carolina Constitution. The issues of the compensability of plaintiff-decedent's death and who are the appropriate beneficiaries, if any, were not before the deputy commissioner and these issues should not be considered now by the Full Commission. Rather, the Commission should not assume jurisdiction in the claim for death benefits and allow the parties to properly resolve this dispute at the deputy commissioner section. Otherwise, we would need to deny the death benefits claim because the Estate is not the proper beneficiary and neither Mrs. Payne nor any other potential beneficiary has filed a claim.
 DEATH CLAIM BARRED BY § 97-61.6
Section 97-61.6 of the Act states:
 "should death result from asbestosis or silicosis within two years from the date of last exposure, or should death result from asbestosis or silicosis, or from a secondary infection or diseases developing from asbestosis or silicosis within 350 weeks from the date of last exposure and while the employee is entitled to compensation for disablement due to asbestosis or silicosis, either partial or total, then in either of these events, the employer shall pay, or cause to be paid compensation in accordance with G.S. § 97-38."
Under this provision, the dependent(s) of a deceased employee, who has asbestosis, is entitled to death benefits in one of two circumstances: (1) the death results from asbestosis within two years from the date of last exposure; or (2) if death results within 350 weeks from the date of last exposure and while the employee is entitled to compensation. SeeDavis v. North Carolina Granite Corp., 259 N.C. 672, 131 S.E.2d 335
(1963).
The majority found that plaintiff died on October 16, 2000, was last employed (by anyone) in 1989, and was last injurious exposed to asbestos while working for Ross Witmer from 1972 through 1975. Under these circumstances, plaintiff did not die within two years of date of last exposure. Nor did his death occur within 350 weeks of his last exposure. Thus, plaintiff's death is not compensable. N.C. Gen. Stat. §§ 97-38,97-61.6.
Therefore, I respectfully dissent from the majority's award of benefits for plaintiff in this case.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
[1] The American Thoracic Society expressed that "[I]t is possible that interstitial fibrosis may be present even though none of these criteria [referring to items 3-6, above] are satisfied, but in our opinion, in these circumstances the clinical diagnosis cannot be made." Thus, a proper diagnosis, absent pathologic examination, requires proof of the first two criteria and at least 1 of the remaining criteria. TheDiagnosis of Nonmalignant Diseases Related to Asbestos, 134 AmericanReview of Respiratory Disease 363 (Adopted by American Lung Association, March 1986).
[2] Dr. Proctor testified that you generally "have to have radiographic findings" to diagnose asbestosis, and that without radiographic findings you have to be careful about attributing disease to asbestosis. Proctor deposition at p. 80. Despite this testimony, Dr. Proctor opined that Mr. Payne had asbestos based on Dr. Dula's B-read for a July 30, 1999 x-ray which reported no parenchymal abnormalities consistent with pneumoconiosis. Dr. Proctor was not presented with Dr. Dula's subsequent report, which was read to reveal a 1/0 profusion level, until his deposition. Neither radiology report, nor any other x-ray study in evidence, meets the required minimum ATS standard of a 1/1 profusion level. Thus, Dr. Proctor's opinion that plaintiff has asbestosis is not substantiated by the medical tests that he believes are relevant. SeeHolley v. ACTS, ___ N.C. ___, ___ S.E.2d ___ (2003); Young v. HickoryBusiness Furniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
[3] Dr. Proctor testified on direct examination that while studying for his Pulmonary Boards he learned that a low vital capacity reading would be very suggestive of a concomitant restrictive ventilatory defect. Proctor deposition at p. 16. Dr. Proctor further explained, however, that in cases of restrictive ventilatory defect you would expect a decrease in values across the board, a lower vital capacity reading, a lower total lung capacity, and a lower residual volume. In plaintiff's examination, however, he only had two of those values diminished. Proctor Deposition at p. 63-64. Dr. Proctor's interpretation of plaintiff's pulmonary function testing fails to raise any question concerning a restrictive component which is the condition associated with asbestosis; plaintiff was diagnosed with unrelated obstructive disease secondary to smoking.
[4] Even the current caption of the Full Commission decision references the Estate as the only party to the action.