***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The appointment of any party who appeared at the hearing in a representative capacity is valid and that said party has duly qualified and that no additional proof of appointment or capacity is required.
4. An employee-employer relationship existed between plaintiff and defendant-employer on December 5, 2002.
5. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
6. The carrier on the risk for the defendant-employer as of December 5, 2002, was Transcontinental Insurance (with RSKCO acting as its administrator).
7. As of December 5, 2002, the employee's average weekly wage was $321.49, producing a compensation rate of $214.33.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff Teresa D. Dillow was 23 years old (DOB: 4/13/1980), and she was working towards obtaining her GED. She is right-handed and is certified as a nurse's assistant.
2. In the five years prior to her employment with the defendant-employer, plaintiff worked for between thirty and thirty-five employers in a number of diverse positions, some of which required significant use of her hands, and several of which involved no repetitive hand movements or caused little, if any, strain on her hands and arms. Various work assignments required her to make considerable use of her hands.
3. During this same five-year period, on at least four occasions plaintiff experienced pain in her hands severe enough to require medical treatment. On February 12, 1998, she sought treatment at the emergency department at Hugh Chatham Memorial Hospital, where she reported pain in her back and shoulders running down her left arm, along with numbness and tingling in both hands. She returned to the Hugh Chatham emergency department on May 30, 2000, for treatment after sustaining an injury to her right hand when it became caught in a double door. Thereafter, on October 4, 2001, plaintiff fell down a flight of stairs suffering an injury to her left hand, and was treated at Northern Hospital of Surry County. Lastly, on June 3, 2002, just four months prior to her employment with ASMO, plaintiff began to experience pain in her left hand running up her left arm while working as a nurse assistant. She received treatment from her family physician and was placed on temporary light duty work restrictions.
4. On October 7, 2002, plaintiff began working as a probationary assembler at the defendant-employer's facility in Mt. Airy. The defendant-employer was engaged in the business of assembling component parts into power-window motors used in automobiles. Plaintiff was trained on all aspects of the assembly, testing and packaging process, and during her shift she rotated every hour to a different station along the assembly line. The defendant-employer established a specific rotation order.
5. The tasks plaintiff were required to perform at each station varied, some involving placing pieces, such as brushes and springs, into the power-motor with a hand tool, and others where plaintiff simply tested the power-motor to see if it were functioning properly. A fully assembled power-motor weighs approximately one pound, and the size, type and weight of the materials plaintiff handled varied depending on the station. At some stations, the tasks required plaintiff to use both hands, while at others she only needed to use one. The defendant-employer's facility in Mt. Airy is not a production-based facility, and the pace of the assembly line depended on the pace of the crew.
6. After working less than two months, on December 5, 2002, plaintiff sought treatment for her right hand at Foothills Family Practice, where she was seen by a family practitioner, Dr. C. Ann Evans. She reported experiencing pain in her right hand for approximately two weeks with intermittent numbness. She did not inform Dr. Evans that she had received prior treatment for her hands. During a physical examination, Dr. Evans examined both of plaintiff's hands and arms, after which she diagnosed right carpal tunnel, and found no abnormalities in plaintiff's left hand or arm. Dr. Evans believed at that time that plaintiff's right carpal tunnel could be treated conservatively and she provided plaintiff with a wrist brace. Dr. Evans released plaintiff to return to work effective December 9, 2002, and referred her to an orthopedist for further evaluation and treatment.
7. Plaintiff returned to work and informed the plant nurse of Dr. Evan's diagnosis, after which she was sent to a certified nurse practitioner, Mark Mayes. Mr. Mayes has actively practiced in occupational medicine, and he first treated plaintiff on December 10, 2002. At that time plaintiff reported pain and numbness in her right wrist for approximately two weeks, and made no indication that she was having any difficulty with her left hand or arm. She also did not disclose that she had received any prior treatment for her hands. During a physical examination, Mr. Mayes performed Tinel's and Phalen's tests on both of plaintiff's hands, the results of which he determined revealed evidence of right wrist tendonitis, but no evidence of any problems in plaintiff's left hand or wrist. Based on these findings, Mr. Mayes placed plaintiff on light duty work restrictions of "no use of her right hand/wrist" and ordered that she undergo nerve conduction studies.
8. Plaintiff returned to work the next day, and when she informed her supervisors of her light duty restrictions, she was assigned to a position sorting inventory tickets. This task involved no strenuous or repetitive use of her hands and basically required plaintiff to sort small pieces of paper into piles according to a number appearing on the paper. She performed this task for approximately two hours, and then reported that she had begun to experience pain in her left wrist. The plant nurse sent her back to Mr. Mayes, who diagnosed left wrist pain, and removed plaintiff from work for the remainder of the day. Mr. Mayes instructed plaintiff that she could return to work the next day with restrictions of no repetitive use of her hands.
9. When plaintiff returned to work on December 11, 2002, she informed her supervisor that she would not perform the task of sorting papers, at which time she was instructed that she was not to stay if she was not going to do any work. Plaintiff left the facility, and since then she has not made any attempt to return to work for the defendant-employer.
10. Nerve conduction studies were performed by Dr. Thomas J. Mascenik on December 18, 2002, which revealed entrapment of the right median nerve at the wrist, and no evidence of nerve entrapment in plaintiff's left arm or wrist. Dr. Mascenik testified that these results were consistent with right carpal tunnel syndrome, but he did not address any treatment recommendations or place plaintiff on any work restrictions because he was not her treating physician.
11. For approximately eleven months and through the hearing date, plaintiff had not sought any further medical treatment for her hands or arms. Plaintiff has not made any effort to return to work for the defendant-employer or sought any other employment. Plaintiff testified at the hearing that none of the thirty to thirty five positions she held prior to working for the defendant-employer involved repetitive hand motions. Despite having been informed by Mr. Mayes and Dr. Evans that she at least could work in a non-repetitive position, plaintiff has made no effort whatsoever to apply for any of her prior positions, or to search for new employment.
12. Dr. Mascenik, Dr. Evans, nor Mr. Mayes provided any testimony regarding whether the assembler position placed plaintiff at a risk greater than the general public of developing carpal tunnel syndrome, and the undersigned specifically finds that there is no credible evidence in the record to support this conclusion.
13. Plaintiff has been able to work at all times since December 5, 2002. The light duty work offered to her by the employer was suitable, and plaintiff unreasonably refused to perform that work. Plaintiff has also failed to make any attempt to return to work since December 5, 2002, and based on plaintiff's own testimony and previous work history, the Full Commission finds that she could have obtained suitable employment had she made any reasonable effort to do so.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Under the Workers' Compensation Act, an employee is entitled to compensation upon a showing that she suffers from an occupational disease. N.C. Gen. Stat. § 97-53. Because carpal tunnel syndrome is not one of the compensable occupational diseases specified under N.C. Gen. Stat. § 97-53, Plaintiff bears the burden of proving that she suffers from an occupational disease as defined by N.C. Gen. Stat. § 97-53(13) (2001). Futrell v. Resinall Corp., 151 N.C. App. 456, 566 S.E.2d 181
(2002).
2. Our Supreme Court has established a three-part test to determine whether a condition is compensable under this statutory provision, requiring a claimant to show the following elements: (1) that the condition for which compensation is sought is "characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged;" (2) that the condition is "not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation;" and (3) that there is "a causal connection between the disease and the [claimant's] employment." Hanselv. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 106 (1981); Rutledgev. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983).
3. Plaintiff has not satisfied her burden of establishing any of the three elements outlined in Hansel v. Sherman Textiles, 304 N.C. 44, 52,283 S.E.2d 101, 106 (1981) in that (a) the competent, credible evidence in this matter fails to show that show that plaintiff's two month employment with the defendant-employer placed her at an increased risk, greater than the general public, of developing carpal tunnel syndrome.Futrell v. Resinall Corp., 151 N.C. App. 456, 460, 566 S.E.2d 181, 184
(2002); and (b) there is no competent medical testimony establishing a casual connection between plaintiff's employment with the defendant-employer and her development of right carpal tunnel syndrome.Smith v. Beasley Enterprises, Inc./Red Apple, 148 N.C. App. 559,577 S.E.2d 902 (2002).
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for disability compensation arising out of her development of right carpal tunnel syndrome, diagnosed on December 5, 2002, must, under the law, be and is hereby DENIED.
2. Plaintiff's claim for payment of any medical expenses arising out of her development of right carpal tunnel syndrome, diagnosed on December 5, 2002, must, under the law, be and is hereby DENIED.
3. Defendants shall bear the costs.
 ***********
This the 22nd day of November 2004
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/mb