LILLIAN EVANS, Plaintiff v. CONWOOD LLC d/b/a TAYLOR BROTHERS, Employer, TRAVELERS INSURANCE COMPANY, Carrier, and/or CONWOOD LLC d/b/a TAYLOR BROTHERS, Employer, SELF-INSURED (ESIS/ACE-USA INSURANCE CO., Adjusting Agent), Defendants

No. COA08-1368

(Filed 1 September 2009)

**1. Workers' Compensation— carpal tunnel syndrome—compensable occupational disease—findings**

The Industrial Commission did not err in a workers' compensation case by holding that plaintiff's carpal tunnel syndrome was a compensable occupational disease. The Commission's findings are supported by competent evidence and are binding. It is not for the appellate court to reweigh the evidence.

**2. Workers' Compensation— last injurious exposure—findings supported by evidence**

The Industrial Commission did not err in a workers' compensation case by finding that plaintiff's last injurious exposure occurred after the employer became self-insured. The Commission's findings are supported by competent evidence in the record and the appellate court cannot reweigh the evidence.

**3. Appeal and Error— unpublished opinions—sanctions not imposed**

Sanctions were not imposed for a violation of the appellate rules in citing an unpublished opinion, but counsel are admonished to use care in the citation of unpublished opinions.

Appeal by defendants from an Opinion and Award filed 11 July 2008 by the North Carolina Industrial Commission. Heard in the Court of Appeals 25 March 2009.

EVANS v. CONWOOD LLC

[199 N.C. App. 480 (2009)]

*Walden & Walden, by Daniel S. Walden, for employee-plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by Philip J. Mohr, for self-insured-defendants-appellants Taylor Brothers and ESIS/ACE-USA Insurance Company.*

*Orbock Ruark & Dillard, PA, by Mark A. Leach, for defendants-cross-appellant Travelers Insurance Company.*

STEELMAN, Judge.

The record supports the Industrial Commission's finding that plaintiff's employment placed her at an increased risk of developing carpal tunnel syndrome. The record also supports the Industrial Commission's finding that plaintiff's occupational disease is compensable. The Industrial Commission was correct in finding that plaintiff was last injuriously exposed to the hazards of carpal tunnel syndrome after Taylor Brothers became self-insured, with ESIS/ACE-USA becoming the adjusting agent. In our discretion, we do not impose sanctions on counsel for Taylor Brothers and ESIS/ACE-USA.

## I. Factual and Procedural Background

In August 1984, Lillian Evans (plaintiff) became an employee at the Taylor Brothers plant in Winston-Salem. Plaintiff has continuously and exclusively worked there performing various job duties, which have included spare packer, pouch dumper, bartelt operator, packer, inspector, inspector bartelt operator, box machine operator, bartelt feeder, and spare operator. In performing these jobs, plaintiff was required to use her hands and wrists for six to seven hours a day, with two fifteen minute breaks and a thirty minute lunch break. Plaintiff testified she used her hands and wrists to bend, extend, stretch, push, and pull.

On 10 February 2005, plaintiff went to see her primary care physician, Dr. Cressent Hudson (Dr. Hudson), complaining of left hand numbness and tingling, which was worse in the mornings and after doing activities with her hands at work. Dr. Hudson diagnosed plaintiff with carpal tunnel syndrome (CTS) and prescribed wearing a left wrist splint at night, Ibuprofen, and icing the left wrist twice a day.

In January 2006, plaintiff reported to her supervisor and the production manager that she was experiencing left wrist pain. On 26 January 2006, plaintiff returned to Dr. Hudson complaining of

EVANS v. CONWOOD LLC

[199 N.C. App. 480 (2009)]

left wrist pain radiating up into her left forearm and left hand weakness. Plaintiff told Dr. Hudson she thought the pain stemmed from repetitive motions at work. Dr. Hudson ordered nerve conduction velocity testing.

On 13 February 2006, Dr. G. Frank Crowell (Dr. Crowell), a neurologist, interpreted the nerve conduction study as showing that plaintiff had "Left carpal tunnel syndrome—moderate." On 2 March 2006, Dr. Hudson referred plaintiff to Dr. Gregg E. Cregan (Dr. Cregan), an orthopaedic hand specialist.

On 27 March 2006, Dr. Cregan evaluated plaintiff who supplied a history of pain for eighteen months in her left elbow with numbness and tingling in the fingers of her left hand. Plaintiff rated her pain severity as 10 on a 10-scale, with 10 being the worst. Dr. Cregan diagnosed her with left CTS and long, second trigger finger, which is a thickening in the ligament overlying the flexor tendon in the forearm. Dr. Cregan recommended that she have a left carpal tunnel release and a long trigger finger release. The surgery was scheduled for June 2006. An issue arose prior to surgery as to whether plaintiff's health insurance was going to pay for the surgery or whether it was covered under worker's compensation. The surgery was postponed until August 2006. Plaintiff continued working full-time pending resolution of this issue.

On 2 June 2006, Taylor Brothers became self-insured, with defendant ESIS/ACE-USA (ESIS/ACE) becoming the adjusting agent. On 14 June 2006, plaintiff completed a written "Injury Report" stating that she had "been experiencing severe pain" in her left hand for "well over a year[,]" that her pain had become "progressively worse," and that Dr. Cregan recommended surgery.

On 29 June 2006, Taylor Brothers completed Industrial Commission (Commission) Form 19 reporting plaintiff's injury. The date of injury was shown as 1 February 2006. The same day, Travelers completed Commission Form 61 denying liability pending receipt of additional information.

On 10 August 2006, Dr. Cregan performed a left carpal tunnel release and a left long trigger finger release. Dr. Cregan noted that plaintiff's transverse carpal ligament was "exceptionally thickened and tight," which confirmed the diagnosis of CTS. Dr. Cregan's practice group directed that plaintiff remain out of work until 23 October 2006.

On 1 September 2006, plaintiff filed Commission Form 18 seeking an award of compensation based upon her CTS. The date of injury was shown as 1 January 2006. On 19 October 2006, plaintiff filed Commission Form 33 seeking a hearing on her claim. On 23 October 2006, plaintiff returned to her regular job duties at Taylor Brothers. On 1 March 2007, the Commission added ESIS/ACE as a carrier-defendant to this matter. Travelers and ESIS/ACE each contended that they were not the carrier at risk at the time of plaintiff's last injurious exposure.

On 11 July 2008, the Commission issued an Opinion and Award holding that plaintiff had suffered injury as a result of a compensable occupational disease, and awarded plaintiff temporary total disability benefits for the period of 10 August through 22 October 2006 at the rate of $463.75 per week and additional disability benefits pursuant to N.C. Gen. Stat. § 97-31(12) for a period of twenty weeks at the rate of $463.75 per week based upon a 10% permanent partial disability rating to plaintiff's left hand. The Commission found that the last injurious exposure was on 9 August 2006 and ordered that Taylor Brothers and ESIS/ACE pay these amounts, together with past and future related medical expenses. Taylor Brothers and ESIS/ACE were awarded a credit pursuant to N.C. Gen. Stat. § 97-42 in the amount of $3,060.04 for the short-term disability benefits paid to plaintiff.

Taylor Brothers and ESIS/ACE appeal. Travelers cross-assigned as error the holding of the Commission that plaintiff suffers from a compensable occupational disease.

## II. Standard of Review

"The standard of review on appeal to this Court from an award by the Commission is whether there is any competent evidence in the record to support the Commission's findings and whether those findings support the Commission's conclusions of law." *Oliver v. Lane Co.*, 143 N.C. App. 167, 170, 544 S.E.2d 606, 608 (2001) (citing *Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996)). The Commission's findings of fact are conclusive on appeal if supported by any competent evidence. "Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citations and quotations omitted).

### III.  Diagnosis of Carpal Tunnel Syndrome

[1] In their first argument, Taylor Brothers and ESIS/ACE contend that the Commission erred in holding that plaintiff's CTS was a compensable occupational disease. In this argument, they contend that findings of fact 5, 8, and 10-14 were not supported by competent evidence. Cross-appellant, Travelers, makes a similar argument, attacking findings of fact 5, 10, and 11. We disagree.

The Worker's Compensation Act enumerates specific medical conditions in N.C. Gen. Stat. § 97-53, which are automatically deemed to be occupational diseases. N.C. Gen. Stat. § 97-53 (2007). CTS is not among the enumerated conditions. If a disease is not specifically listed, it may still qualify under N.C. Gen. Stat. § 97-53(13), which defines occupational disease as:

> Any disease, other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

N.C. Gen. Stat. § 97-53(13) (2007).

Our Supreme Court has interpreted N.C. Gen. Stat. § 97-53(13) to require that plaintiff establish three elements to demonstrate an occupational disease:

> (1) the disease must be characteristic of and peculiar to the claimant's particular trade, occupation or employment;
>
> (2) the disease must not be an ordinary disease of life to which the public is equally exposed outside of the employment; and
>
> (3) there must be proof of causation (proof of a causal connection between the disease and the employment).

*Smith-Price v. Charter Pines Behavioral Ctr.*, 160 N.C. App. 161, 166, 584 S.E.2d 881, 885 (2003) (citations omitted). Plaintiff does not need to prove her disease originates exclusively from or be unique to her particular occupation to satisfy the first and second elements. "All ordinary diseases of life are not excluded from the statute's coverage. Only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded." *Rutledge v. Tultex Corp.*, 308 N.C. 85, 93, 301 S.E.2d

359, 365 (1983) (citing *Booker v. Medical Center*, 297 N.C. 458, 472-75, 256 S.E.2d 189, 198-200 (1979)). The first two elements are satisfied if her employment exposed plaintiff to a greater risk of contracting the disease than the general public. "The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation." *Id.* at 94, 301 S.E.2d at 365 (internal citation omitted). To prove the final element, plaintiff must prove that her employment significantly contributed to or was a significant causal factor in the development of her disease. *Id.* at 101, 301 S.E.2d at 369-70. "This is so even if other non-work-related factors also make significant contributions, or were significant causal factors." *Id.*, 301 S.E.2d at 370.

Defendants' argument focuses upon the testimony of Dr. Cregan, plaintiff's treating physician who testified concerning medical causation. Defendants contend Dr. Cregan answered "leading hypothetical questions in Plaintiff's favor" because the job description given by plaintiff was "woefully inadequate," and Dr. Cregan acknowledged he had no personal knowledge of plaintiff's job duties. They argue the actual job descriptions given by the employer were correct and demonstrate that plaintiff's different job positions would not significantly contribute to the development of CTS. Therefore, they argue plaintiff has not established a causal connection between her employment and the CTS.

Taylor Brothers and ESIS/ACE offer an unpublished case from this Court, which they contend stands for the proposition that when a physician's causation opinion is based solely upon an inaccurate hypothetical, the opinion cannot serve as a basis to find the disease compensable. *See Smith v. Beasley Enters., Inc.*, 148 N.C. App. 559, 560 S.E.2d 885 (2002) (unpublished). However, in *Smith*, the Full Commission concluded that plaintiff had failed to demonstrate her carpal tunnel syndrome was an occupational disease, and plaintiff argued that the medical opinions she offered were sufficient evidence to satisfy N.C. Gen. Stat. § 97-53(13). This Court affirmed the Commission and noted that the defendant in *Smith* correctly pointed out that the medical opinions offered by witnesses were based on a hypothetical question inaccurately describing plaintiff's job duties. *Id.* (citing *Lineback v. Wake County Board of Commissioners*, 126 N.C. App. 678, 486 S.E.2d 252 (1997)). In *Lineback*, this Court stated, "Although the Commission may choose not to believe the evidence after considering it, it may not wholly disregard or ignore *competent* evidence." *Lineback*, 126 N.C. App. at 680, 486 S.E.2d at 254 (citations

omitted) (emphasis added). So long as the record contains some evidence, which supports facts presumed in the hypothetical question, factual conflicts and the probative force of such evidence is for the Commission to resolve. *Matthews v. City of Raleigh*, 160 N.C. App. 597, 606-07, 586 S.E.2d 829, 837 (2003) (quoting *Blassingame v. Asbestos Co.*, 217 N.C. 223, 236, 7 S.E.2d 478, 486 (1940)).

> Further, the omission of a material fact from a hypothetical question does not necessarily render the question objectionable or the answer incompetent. It is left to the cross-examiner to bring out facts supported by the evidence that have been omitted and thereby determine if their inclusion would cause the expert to modify or reject his earlier opinion.

*Rutledge*, 308 N.C. at 91, 301 S.E.2d at 364 (citations omitted).

In the instant case, the Commission concluded plaintiff had sufficiently demonstrated that her CTS was an occupational disease and based part of its conclusion on Dr. Cregan's testimony. Dr. Cregan testified CTS is more common in people who "do gripping, squeezing kind of activities or high-speed typing . . . ." Dr. Cregan testified he did not have any history, besides plaintiff's employment, that plaintiff was exposed to other potential causes of CTS. He then answered questions presented by Taylor Brothers and ESIS/ACE's attorney who informed him of Taylor Brothers' descriptions of plaintiff's job duties. Dr. Cregan stated that if certain details were true, then some of plaintiff's job duties would not have contributed to her CTS. He further testified that for plaintiff's employment to be a contributing factor to CTS, her job duties would have to entail repetitive grasping, squeezing, and full flexing, and the job duties described to him by defendants' attorney did not involve those activities.

As to Dr. Cregan's testimony, the Commission found:

10. Dr. Cregan opined that plaintiff's employment with defendant caused or significantly contributed to the development of her left carpal tunnel syndrome and left middle trigger finger condition. Additionally, Dr. Cregan opined that plaintiff's employment with defendant exposed her to an increased risk of developing her left carpal tunnel syndrome and left middle trigger finger condition as compared to members of the general public not so exposed.

11. Based on the credible lay and medical evidence of record, the undersigned find that plaintiff's employment with defendant caused or significantly contributed to the development of her left

carpal tunnel syndrome and left middle trigger finger condition. Additionally, based upon the credible lay and medical evidence of record, the undersigned find that plaintiff's employment with defendant exposed her to an increased risk of developing her left carpal tunnel syndrome and left middle trigger finger condition as compared to members of the general public not so exposed.

12. Through August 9, 2006, plaintiff continued performing her regular duties for defendant. Until that date, the credible evidence of record is that plaintiff's symptoms continued to worsen. Additionally, Dr. Cregan has opined that the last day plaintiff worked for defendant would be the last day she was exposed to the hazards of carpal tunnel syndrome.

. . .

18. Medical records from a February 10, 2005 examination of plaintiff by Dr. Hudson reflect that plaintiff reported experiencing symptoms related to carpal tunnel syndrome following activities at work. However there is no evidence that Dr. Hudson informed plaintiff that her condition was work-related. Plaintiff contends that she was first informed by a competent medical professional of the possible work-related nature of her left carpal tunnel syndrome on April 16, 2007 by Dr. Cregan. []

"The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The courts may set aside findings of fact only upon the ground they lack evidentiary support." *Anderson v. Construction Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965) (citations omitted). Besides Dr. Cregan's testimony, the Commission based its conclusions on lay testimony. Both plaintiff and Tracy Glenn (Glenn), personnel manager for Taylor Brothers, testified. Glenn stated that plaintiff used her hands for approximately two hours a day, two and a half days a week for a period of fifty weeks in a calendar year. He testified this amount of time was calculated by focusing, "on actual hand motions the time—the approximate time that she would be using her hands in an eight hour shift—possibly." Plaintiff testified that she continuously used her hands and wrists, and stated that "depending on where [she] was working at, [she] would maybe be relieved for about three minutes at the most[.]"

The Commission's findings of fact are supported by competent evidence in the record and are binding on appeal. Plaintiff testified before the Commission that in her general job duties as a laborer for

Taylor Brothers, she used her hands and wrists for approximately six to seven hours a day. In describing the hand and wrist motions she made in performing her duties, plaintiff stated, "Uh, bending, extending, stretching, pulling—just hand motions. Just using them constantly doing something." She further testified that she made twisting, rotating, grabbing, and squeezing motions. Plaintiff's testimony competently supports the hypothetical question presented to Dr. Cregan as to whether plaintiff's job placed her at an increased risk for contracting CTS and whether the disease was caused by her employment. This evidence validates Dr. Cregan's answer that if plaintiff's job duties involved repetitive squeezing and grasping, then her employment would be a contributing factor in the development of CTS.

The Commission also heard testimony from both sides as to plaintiff's job duties. The Commission gave greater weight to plaintiff's evidence than to defendants' evidence. It is not for this Court to reweigh the evidence. "The findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." *Jones v. Desk Co.*, 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965).

This argument is without merit.

### IV. Last Injurious Risk

**[2]** In their second argument, Taylor Brothers and ESIS/ACE contend the Commission erred in finding that plaintiff's last injurious exposure occurred after Taylor Brothers became self-insured, with ESIS/ACE becoming the adjusting agent. They argue that if plaintiff has proven she has suffered a compensable occupational disease, then it was during the time when Travelers was the insurance carrier.

N.C. Gen. Stat. § 97-57 states:

In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.

N.C. Gen. Stat. § 97-57 (2007).

The term "last injuriously exposed" is defined as "an exposure that proximately augmented the disease to any extent, however slight." *Mann v. Technibilt, Inc.*, 193 N.C. App. 193, 195, 666 S.E.2d

851, 855 (2008) (citing *Rutledge*, 308 N.C. at 89, 301 S.E.2d at 362). Exposure at work to elements "which can cause an occupational disease can be so slight quantitatively that it could not in itself have produced the disease." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 358, 524 S.E.2d 368, 374 (2000) (citing *Caulder v. Waverly Mills*, 314 N.C. 70, 72, 331 S.E.2d 646, 647 (1985)), *disc. review denied*, 351 N.C. 473, 543 S.E.2d 488 (2000).

Taylor Brothers and ESIS/ACE argue the Commission erred by interpreting "last injurious exposure" to mean the period of time when plaintiff was exposed to the hazards of the employment. They argue the correct definition of "last injurious exposure" is the time when the employment augments the disease process.

As this Court has stated:

It must have been fully understood by those who wrote the law fixing the responsibility on the employer in whose service the last injurious exposure took place, that situations like this must inevitably arise, but the law makes no provision for a partnership in responsibility, has nothing to say as to the length of the later employment or the degree of injury which the deleterious exposure must inflict to merit compensation. It takes the breakdown practically where it occurs—with the last injurious exposure.

*Jones v. Beaunit Corp.*, 72 N.C. App. 351, 353-54, 324 S.E.2d 624, 625 (1985) (citation omitted). The first insurance carrier is liable only if plaintiff's CTS had reached the point of saturation at the time the second insurance carrier had assumed the risk. *Id.* at 354, 324 S.E.2d at 626.

The Commission found:

12. Through August 9, 2006, plaintiff continued performing her regular duties for defendant. Until that date, the credible evidence of record is that plaintiff's symptoms continued to worsen. Additionally, Dr. Cregan has opined that the last day plaintiff worked for defendant would be the last day she was exposed to the hazards of carpal tunnel syndrome.

13. Plaintiff was last injuriously exposed to the hazards of carpal tunnel syndrome and left middle trigger finger condition in her employment with defendant on August 9, 2006, at which time defendant was self-insured, with ESIS/ACE-USA acting as the servicing agent.

Based on these findings, the Commission concluded that Taylor Brothers and ESIS/ACE were liable for plaintiff's injuries.

Plaintiff testified her symptoms worsened after 1 June 2006 and continued until her surgery. Her pain, weakness, and numbness worsened and interfered with her sleep. Dr. Cregan stated that waking up at night with a numb and tingly hand, regardless of pain, is an important criterion for surgery. He further opined it is possible for CTS to worsen between the time the person meets the criteria for surgery and when the surgery is actually performed. As for the last time plaintiff had exposure to the employment hazards, Dr. Cregan stated that if the Commission "felt like this work environment was to some degree causing an effect that resulted in carpal tunnel syndrome, then the last day she worked would be the last time she had exposure to the hazard, . . . worsening the carpal tunnel."

This Court cannot reweigh the evidence, and our role is to examine the record to see if any competent evidence supports the findings. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. The Commission's findings of fact are supported by competent evidence in the record, and these findings in turn support the Commission's conclusion that plaintiff's last injurious exposure to the hazards of her employment was after liability for the risk shifted from Travelers to Taylor Brothers, with ESIS/ACE acting as the adjusting agent.

This argument is without merit.

### III. Violation of Appellate Rules of Procedure by Counsel for Taylor Brothers and ESIS/ACE

[3] In their brief, Taylor Brothers and ESIS/ACE cite the case of *Smith v. Beasley Enters., Inc.*, 148 N.C. App. 559, 560 S.E.2d 885 (2002). This case was reported pursuant to Rule 30(e) of the Rules of Appellate Procedure. This rule provides that citation of unpublished opinions is disfavored. Such an opinion may be cited if a party believes that it has precedential value to a material issue in the case, and there is no published opinion that would serve as well. When an unpublished opinion is cited, counsel must do two things: (1) they "must indicate the opinion's unpublished status;" and (2) they must serve a copy of the opinion on all other parties to the case and on the court. N.C.R. App. P. 30(e)(3) (2007). In the instant case, counsel did neither of these things. This conduct was a violation of the Rules of Appellate Procedure. In our discretion, we hold that this conduct was not a gross violation of the Rules of Appellate Procedure meriting

the imposition of sanctions. However, counsel is admonished to exercise greater care in the future citation of unpublished opinions.

AFFIRMED.

Judges BRYANT and ELMORE concur.