***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments of the parties. The appealing party has not shown good ground to reconsider the evidence; receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission AFFIRMS with minor modifications the Opinion and Award of Deputy Commissioner Holmes.
 *********** ISSUES
1. Whether Plaintiff suffered a compensable occupational disease?
2. What amount of damages, if any, is Plaintiff entitled to recover under the Workers' Compensation Act? *Page 2 
 ***********
The parties stipulated to the following as:
 EXHIBITS
1. Exhibit 1: Plaintiff's medical records.
2. Exhibit 2: Plaintiff's personnel file.
3. Exhibit 3: North Carolina Industrial Commission Forms.
4. Exhibit 4: Defendants' discovery responses.
5. Exhibit 5: Surveillance videos.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. That all parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. That all parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. That the Plaintiff alleges to have sustained a compensable injury on November 7, 2007.
5. That the Plaintiff was employed by Defendant-Employee at all times relevant hereto. *Page 3 
6. At the time of alleged injury, Plaintiff's average weekly wage was $542.29, yielding a compensation rate of $361.54.
7. That Defendant Brentwood Services Inc. was the carrier on the risk at all times relative to this action.
 ***********
All of the competent evidence of record and reasonable inferences flowing therefrom engender the following:
 FINDINGS OF FACT
1. Plaintiff, currently 25 years old at the time of hearing before the Deputy Commissioner, was employed by the Defendant in March 2006. He was initially hired as a body shop apprentice, whose duties included cleaning up the body shop and cleaning cars.
2. In October 2006, Plaintiff purchased a Ninja motorcycle. Plaintiff rides the motorcycle at least twice a week, with his arms reach downward towards the handle bars. Plaintiff admits that driving the motorcycle "takes a lot out of his arms."
3. Plaintiff developed shoulder pain as early as December 2006. Shoulder pain was also documented in and about April 2007.
4. Plaintiff began full duty body work as a technician with employer in May 2007.
5. Plaintiff's duties as a full duty technician included sanding vehicles three to four hours per day, taping vehicles two to three hours per day, and performing dent removal anywhere from one-half to two hours per day. All of these tasks depend on the work load of the shop. *Page 4 
6. Plaintiff worked less strenuously and not at full capacity as compared to other body shop technicians. Plaintiff's work production was less than the average body shop technician.
7. On a physical therapy evaluation form dated December 19, 2007, it was noted that Plaintiff had experienced left shoulder pain occurring for one year and that he "has got to the point of needing intervention."
8. Plaintiff presented to Dr. Charles Essex on November 14 2007 complaining of tightness in his chest and experiencing numbness in his left arm extending to his finger. Plaintiff was removed from work from November 27, 2007 to January 2, 2008.
9. Dr. Essex referred Plaintiff for physical therapy on December 18, 2007. A physical therapy evaluation noted that Plaintiff experienced left shoulder pain for one year and had progressed to the point of requiring intervention.
10. Dr. Essex referred Plaintiff to Dr. Craig R. Bennett of Northwest Orthopedic Associates. Upon his initial presentation, Dr. Bennett noted that claimant had left shoulder pain "going on for eight to nine months." During Plaintiff's second visit to Dr. Bennett on January 28, 2008, Dr. Bennett noted that Plaintiff reported left shoulder pain since April 2007.
11. Due to ongoing pain, Dr. Bennett recommended arthroscopic surgery for Plaintiff's left shoulder impingement with biceps tendonitis. Surgery was performed on June 3, 2008.
12. Plaintiff was terminated from Defendant's employ on June 16, 2008. Defendant subscribes to reasons for the termination: a) Plaintiff's substandard levels of production had resulted in the loss of an important contract and b) a general downturn in Defendant's business. Plaintiff's termination was not related to his workers' compensation claim and non-disabled *Page 5 
employees would have been terminated for the same conduct. Following Plaintiff's termination, he applied for unemployment compensation benefits.
13. On July 16, 2008 between 11:58 a.m. to 12:01 p.m., Defendants' surveillance investigator observed Plaintiff helping someone move to another location. The investigator observed Plaintiff moving one end of a mattress and carrying one end of a couch.
14. On August 29, 2008, Dr. Bennett released Plaintiff from his care at that time, noting that Plaintiff had full range of motion and good strength. Dr. Bennett opined that Plaintiff could return to work without restrictions and suffered no permanent impairment to his left shoulder.
15. Dr. Bennett testified that Plaintiff would have been able to return to work without any restrictions as of August 29, 2008, and that Plaintiff has no permanent impairment to his left shoulder.
16. Prior to Plaintiff's employment with employer, he experienced a snow boarding accident on December 21, 2004, in which he was going about 50 m.p.h., lost control, fell backwards, and struck the back of his head and neck. Gary Nichols, P.A.-C of Wilkes Surgical Associates noted on December 22, 2004 that Plaintiff was unable to work due to the amount of pain in his neck and shoulders.
17. Dr. Bennett testified that Plaintiff could have sustained his impingement syndrome was a result of his employment activities but other activities of life could have equally contributed to the condition. When asked if Plaintiff's employment was more likely than not to have contributed to the condition, Dr. Bennett declined to opine that Plaintiff's employment would be more likely to have caused the condition. In reviewing video clips of Plaintiff's work activities, Dr. Bennett identified several activities that could have caused Plaintiff's condition. *Page 6 
18. Plaintiff's counsel asked Dr. Bennett to consider three assumptions: a) Plaintiff did not have any shoulder problems before he began working with employer in March 2006; b) Plaintiff began having shoulder pain around May 2007 which continued to increase over time; and c) Plaintiff did not do any other repetitive activities with his left arm, other than ride a motorcycle. Based on those assumptions, Plaintiff's counsel solicited Dr. Bennett's opinion whether Plaintiff's employment activities significantly contributed to his shoulder impingement. Dr. Bennett responded affirmatively on the condition that those assumptions were true.
19. The assumptions relied upon by Dr. Bennett when answering the hypothetical question did not accurately reflect the complete, relevant facts. The omissions of material facts render the hypothetical posed to Dr. Bennett inaccurate to an appreciable degree. These omissions are the facts that Plaintiff had a previous snowboarding accident that could have contributed to his shoulder impingement, that Plaintiff had complained of shoulder pain before becoming a full duty body technician, that Plaintiff drove a motorcycle that could contribute to his shoulder impingement, and that Plaintiff did not work as strenuously as other technicians.
20. Defendants regained Dr. Gary R. Kuzma to render opinions as to the causation of Plaintiff's left shoulder impingement. Dr. Kuzma reviewed the Defendants' activities video, job report, and medical records. He did not personally examine the Plaintiff.
21. Dr. Kuzma opined that the timing of Plaintiff's left shoulder pain compared to when he began working full duty as a technician makes it less likely that Plaintiff's job contributed to his shoulder impingement. He further opined that Plaintiff's prior snowboarding accident could have contributed to the shoulder impingement. Dr. Kuzma conceded that certain *Page 7 
activities performed by the Plaintiff, including the use of a grinder and sander that required the use of both arms, increased Plaintiff's risk of shoulder impairment.
 ***********
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. For an occupational disease to be compensable, Plaintiff must show by the greater weight of the evidence a) that his job exposed him to a greater risk of contracting the disease than those members of the general public not so employed and 2) that his exposure significantly contributed to or was a causal factor in the disease's development. Chambers v. Transit Management,360 N.C. 609, 636 S.E.2d 553 (2006); Rutledge v. Tultex,308 N.C. 85, 301 S.E.2d 359 (1983).
2. Dr. Bennett's causation opinion based upon a materially inaccurate hypothetical is not sufficient to find that Plaintiff contracted an occupational disease causally related to Plaintiff's employment with Defendant. Smith v. Beasley Enterprises, Inc./RedApple,148 N.C. App. 559, 560 S.E.2d 885 (initially reported per Rule 30(3), fully published, ___ N.C. App. ___, 577 S.E2d 902 (2002).
3. Considering all of the medical testimony and opinions based upon the materially incomplete hypothetical, the opinions are speculative as to causation and incompetent to conclude that Plaintiff contracted an occupational disease as consequence of his employment with the Defendant or that Plaintiff's employment with Defendant materially aggravated a preexisting condition. "[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed form the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the *Page 8 
injury." Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "Could" or "might" testimony is insufficient to support a causal connection when there is additional evidence showing the expert's opinion to be a guess or mere speculation. Young v. Hickory Bus. Furn.,353 N.C. 227, 233, 538 S.E.2d 912, 916 (2000).
 ***********
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Plaintiff's claim for benefits for his left shoulder impingement, with biceps tendonitis must be, and the same is hereby DENIED.
2. Each side shall bear its own costs, except that the Defendants shall pay an expert witness fee of $530.00 to Dr. Gary Kuzma if not already paid.
This the ___ day of December 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER